OCTOBER TERM, 1878.　　　29

The State ex rel. Watkins v. Macon County Court.

THE STATE *ex rel.* WATKINS V. MACON COUNTY COURT.

| 68 | 29 |
|---|---|
| 37a | 101 |
| 68 | 29 |
| 105 | 240 |
| 68 | 29 |
| 106 | 516 |
| 68 | 29( |
| 58a | 129 |

1. **Missouri & Mississippi Railroad Bond Tax**: COMMON FUND OF THE COUNTY. The tax of one-twentieth of one per cent. authorized by section 13 of the charter of the Missouri & Mississippi Railroad Company (Acts 1865, page 86) is the only tax authorized by law to be collected to pay bonds issued under that charter. The common fund of the county collected for the purpose of defraying the current expenses of the county government is not applicable to their payment.

2. **County Bond Tax**: LIMITATION ON THE RATE, PART OF THE CONTRACT: COUNTY REVENUE: MANDAMUS. One who takes county bonds issued under a statute which limits the rate of taxation that may be imposed for their payment to one-twentieth of one per cent., is chargeable with knowledge of the limitation. It enters into and forms part of the contract between him and the county; and the county court cannot be compelled, by mandamus, to appropriate other funds in the county treasury, raised for other purposes, to the payment of such bonds. Neither the fact that they have been reduced to judgment, nor the fact that the specific fund provided is inadequate, can change this rule.

3. **County Railroad Bonds**: COMMON FUND OF THE COUNTY. The extraordinary indebtedness incurred by a county in issuing bonds to pay a railroad subscriptiton, is not one of the "expenses of the county" within the meaning of Wag. Stat., sec. 165, p. 1193, and cannot be paid out of the fund raised by taxation under that section.

4. ——— : ———. The county court will not be compelled, by mandamus, to issue a warrant on the common fund of the county for the payment of railroad bonded indebtedness, when the result would be to withdraw from the treasury all the funds necessary for the support of the county government, and thus to disrupt and disorganize it.

5. **County Warrant**: MANDAMUS AGAINST COUNTY COURT. When the county court has refused the application of a creditor of the county, whose claim has been reduced to judgment, for a warrant on the treasury payable out of a particular fund, it will not be compelled, by mandamus, to change its decision and grant the warrant; 1st, Because its action on the application is judicial; 2nd, Because an appeal lies from its order to the circuit court.

6. **The case of The United States** *ex rel. &c.,* **v. Clark County Court, 96 U. S. Rep. 211, disapproved.**

The State ex rel. Watkins v. Macon County Court.

*Appeal from Macon Circuit Court.*—Hon. Andrew Ellison, Judge.

*J. L. Berry* and *S. J. Wilson* for relator.

The judgment is a general liability against the county, and payable out of the common fund of said county, and it was the duty of the county court to direct its clerk to issue a warrant on the county treasurer for its payment. Wag. Stat., sec. 28, p. 414, Ib., sec. 31, p. 415. By virtue of the provisions of the act of the General Assembly of Missouri, chartering the Missouri & Mississippi Railroad Company, Macon county subscribed to the capital stock of said railroad company to a large amount, and is, to-day, the owner and holder of such stock, and in consideration therefore, issued and delivered her bonds, stipulating therein, absolutely and unconditionally to pay her subscription, dollar for dollar, at the maturity of said bonds, and it matters not whether the stock is worth par or worthless, the liability of the county to pay the bonds is fixed and absolute. The tax of one-twentieth of one per cent. provided for in the act chartering said railroad company, was intended to give additional credit and commercial value to county bonds issued for subscription to the stock of said railroad company. The subscription was authorized to aid in the construction of a railroad, and it was certainly not intended by the act that the value of the bonds was to be impaired by the provision of a limited special tax to pay them, entirely inadequate, thereby defeating the very object for which the subscription was authorized. *U. S. ex rel. Johnson v. Clark County Court,* 96 U. S. 211.

*James Carr* for respondents.

Is there any other power to enforce the payment of these bonds and coupons conferred upon the county court of Macon county than to "levy a tax to pay the same, not

to exceed one-twentieth of one per cent. upon the assessed value of the taxable property for each year?" None. It is not so nominated in the act. The power to issue the bonds was created by the act, and by the act the power to enforce the payment was likewise conferred. Whatever this secures the relator is entitled to its full measure; no more; and the respondents do not ask him to take any less. There is no statute of this State, aside from the 13th section of the charter of the railroad company, which confers any authority on the respondents, as justices of Macon county court, to levy any tax at all for the purpose of paying the bonds in controversy. What then would be the effect of ordering a warrant to be drawn upon the common fund of the county? It would take every dollar out of the treasury and leave nothing to pay the expenses necessarily incurred in administering the county government. The money which had been levied and collected of the taxpayers of the county, according to law, would thus be diverted from its legitimate purpose, and perverted to one which was not only not authorized, but which was in fact against the direct wishes of nine-tenths of the tax-payers of the county, and *ex necessitate*, would disorganize it; for money is as much the *sine qua non* of government, as it is of war. This would be doing indirectly what the court could not do directly. Courts do not knowingly render judgments which produce, or even tend to produce, such anarchy.

It is the policy of the governments of all civilized countries to sustain themselves anyhow and at all events. The rights of the government are always held paramount to those of the citizen. It is upon this principle that the salary of a public officer is not subject to garnishment, the presumption being that he would not be able to perform his duty to the public without the regular payment of his salary. It is upon the same principle that the government drafts citizens into its military service, forcing them away from their homes, from father, mother, brothers, sisters,

wife, children, friends, from everything that is near and dear to them, and placing them in the face of the enemy, in the valley of the shadow of death, to fight, to bleed, and, perhaps, to die. And it is upon the same principle that government is always a preferred creditor against every man's estate, solvent or insolvent. 1 Kent, 262 ; Rev. Stat. U. S., § 5101, p. 988 ; Wag. Stat., § 1, p. 101.

A county is a political subdivision of the State, and the county court is a part of the State government with specific powers, duties and functions generally local to the county, it is true, but derived from the State and not from the county. *Reardon v. St. Louis Co.*, 36 Mo. 561 ; *St. Louis Police Commissioners v. County Court*, 34 Mo. 546 ; *Steines v. Franklin Co.*, 48 Mo. 188 ; *Ray Co. v. Bentley*, 49 Mo. 236. The return shows that the effect of drawing a warrant upon the common fund would be to disorganize the county government. The county court is a part of the State government. This court will not lend itself to any such anarchical act.

Where a debt has been incurred by a county, with the understanding that it was to be paid out of a particular fund, such as the road and canal fund, the creditor of the county, if that fund turns out to be insufficient, is not entitled to resort to the common fund for payment. *Pettis Co. v. Kingsbury*, 17 Mo. 479 ; *Kingsberry v. Pettis County Court*, 48 Mo. 208 ; *The State v. Bollinger County Court*, 48 Mo. 475 ; *Campbell v. Polk Co.*, 49 Mo. 214. The section authorizing the respondents, as justices of Macon county court, to order the warrant to be drawn, and the section which empowers the county courts " to levy such sums as may be annually necessary to defray the expenses of their respective counties by a tax upon all property, and licenses made taxable by law for State purposes," (Wag. Stat., § 165, p. 1193,) should be so construed as not to disorganize or stop the wheels of the county government, although such construction might result in the county's judgment creditor not being paid anything out of the common fund

of the county, which has been levied and collected for the express purpose of defraying the expenses of the county. The following cases hold that the current expenses of the county must be first paid before a general judgment creditor of the county is entitled to be paid, and the decisions are based on the inexorable necessity, that the county government must live, and the rights of the citizen are always subordinated to those rights. *Grant v. City of Davenport*, 36 Iowa 401; *Coffin v. Same*, 26 Iowa 315; *Iowa R. R. Land Co. v. County of Sac*, 39 Iowa 134; *French v. Burlington*, 42 Iowa 618; *Von Hoffman v. City of Quincy*, 4 Wall. 549; *Commonwealth v. Commissioners of Lancaster Co.*, 6 Binney 5.

NORTON, J.—This is a proceeding instituted in the circuit court of Macon county against the defendants as justices of the county court of Macon county, to compel them by mandamus to draw a warrant on the county treasurer of said county, payable out of the general expenditure fund. It is alleged in the petition that the relator obtained judgment in the circuit court of Macon county for the sum of $3,645 against said county on certain bonds issued and delivered to the Missouri & Mississippi Railroad Company in payment of a subscription of stock to said company, made under and by virtue of the charter of said company; that said judgment is unpaid, and that the county has no property out of which said judgment, or any part thereof, could be made on execution; that the levy of one-twentieth of one per cent. on the assessed value of the taxable property of said county is wholly insufficient to pay said judgment and other judgments now subsisting against the county on other bonds issued to said company; that defendants, upon demand made, refused to issue their warrant to relator in discharge of said judgment to the county treasurer, payable out of the common fund of the county.

The defendants, in their return to the alternative writ,

admit all the facts stated in the petition, and set up by way of further returns that the stock was subscribed and the bonds issued to said company under the provisions of the 13th section of said charter, which is as follows: " It shall be lawful for the corporate authorities of any city or town or county court of any county desiring so to do, to subscribe to the capital stock of said company, and may issue bonds therefor and levy a tax to pay the same not to exceed one-twentieth of one per cent. upon the assessed value of the taxable property for each year."

That in and by virtue of the power thus conferred, and no other, the said county court, without a vote of the people, and against the wishes of a large majority of the people, subscribed, on the 16th of April, 1867, $175,000 to the capital stock of said company, and also on the 12th of April, 1870, made a like subscription of the further sum of $175,000 under the same authority and no other, without a vote of the people and against the wishes of nine-tenths of the voters of said county; that the county court of said county has levied every year, since such subscriptions were made and bonds issued, a special tax of one-twentieth of one per cent. on the assessed value of all the taxable property in said county, which tax has been regularly collected and applied to the payment of said bonds and interest; that the tax thus collected was wholly inadequate to pay all the interest on said bonds; that the constitution of 1875, section 11, article 10, limits the power of the county to impose a tax for county purposes to 50 cents on the $100 valuation; that section 165, chapter 118 Wagner's Statutes, provides that the " several county courts are empowered to levy such sums as may be annually necessary to defray the expenses of their respective counties by a tax upon all property and licenses made taxable by law for State purposes, but the tax shall in no case exceed one-half of one per cent. on all taxable property." That the tax thus authorized to be levied constitutes the common fund of the county, and that the whole amount thus raised

OCTOBER TERM, 1878.

35

The State ex rel. Watkins v. Macon County Court.

is necessary to pay the current and necessary expenses of conducting the county government, and that no part of this fund is applicable to the payment of relator's judgment, and that a withdrawal of it for such a purpose would disorganize the county government.

A demurrer to the return was overruled and judgment was rendered for defendants, from which plaintiff has appealed. The record presents for our determination the simple question whether the common fund of the county, collected for the purpose of defraying the current expenses of the county government, is applicable to the payment of relator's judgment, and whether the county court can be compelled to draw a warrant on the treasurer payable out of said fund.

Without stopping to consider or determine whether, after a demand against a county has been put into judgment, mandamus will lie to compel the county court to issue its warrant on the treasurer in payment of same, we will proceed to the discussion of the question presented by the record. The only authority upon which the relator relies for issuing the bonds, is to be found in the 13th section of an act to incorporate the Missouri & Mississippi Railroad Company, (Acts 1865, p. 86,) which declares that " it shall be lawful for the corporate authorities of any city or town, or the county court of any county desiring to do so, to subscribe to the capital stock of said company, and may issue bonds therefor and levy a tax to pay the same not to exceed the one-twentieth of one per cent. upon the assessed value of the taxable property for each year."

This section has been construed by this court, in the case of the *State ex. rel. v. Shortridge et al.*, 56 Mo. 126. It was there held that section 13 of said act entered into and formed a part of the bonds themselves as much so as if it had appeared, *in hæc verba*, on their face; and the effect of said section was to limit the power of the county court to a levy of a tax of one-twentieth of one per cent. for their

1. MISSOURI & MISSISSIPPI RAILROAD BOND TAX: common fund of the county.

payment in any one year; and that this limitation was for the benefit of the tax-payers, and forbids the imposition of any greater tax than one-twentieth of one per cent. in any one year by the county court. The principle announced, that section 13 of the act entered into the contract, finds support in the case of *Von Hoffman v. City of Quincy*, 4 Wall. 554, and Cooley Con. Lim., 285. It was also held that the power of taxation belongs alone to the State, and can only be exercised by virtue of laws passed by the General Assembly for that purpose, and that there can be no such thing as an implied power in a county court to levy a tax. We are disposed to adhere to the principles enunciated in that case, believing them to be supported both by reason and authority, and adhering to them we are forced to answer the question this record presents in the negative.

If, as was decided in that case, the county court of Macon county could not be compelled by mandamus to levy a tax in excess of one-twentieth of one per cent. to raise revenue with which to pay such bonds and the interest on them, as constituting the right of action on which the relator obtained his judgment, we are at a loss to perceive upon what principle the court could be compelled, by mandamus, to seize upon other funds in the treasury of the county, raised for another and different purpose, and apply them to an object not contemplated when the tax, which brought the revenue into the treasury, was imposed. The fact that the bonds and coupons have been put into a judgment, can neither enlarge nor diminish the powers of the county court in regard to providing for payment by levying a tax. To compel the county court to divert the common fund of the county from the purposes for which they had the lawful right to impose the tax, which produced these funds, and apply it to a purpose for which they had no lawful right to impose a tax beyond the limit prescribed by law, viz : one-twentieth of one per cent. would be doing indirectly, and by evasion, what we have decided could

not be done directly.    We can give no toleration to such a doctrine.

The very law authorizing the issuance of the bonds and coupons upon which relator obtained his judgment, 2. COUNTY BOND TAX: limitation on the rate, part of the contract: county contract: mandamus. provided for raising a specific fund out of which they were to be paid.   This law entered into and formed a part of the contract, and when the subscription was made and the bonds issued to the company in payment of it, the company and all others into whose hands they might come, are chargeable with knowledge of the fact that they were to look for payment to a specific fund to be provided by the levy of a tax not in excess of one twentieth of one per cent.   It is no answer to say that the fund provided is inadequate.   The inadequacy of the fund to discharge the obligation cannot confer either on the county court or any other court the power to provide any other fund to meet the obligation, than that which the law authorizing the contraction of the debt had provided.

If the county court in subscribing $350,000 of stock and issuing that amount of bonds to pay it, issued an amount in excess of what a tax of one-twentieth of one per cent. would pay, the company could have refused to accept the subscription on that ground.   This, however, was not done.   The amount of bonds and interest that an annual tax of one-twentieth of one per cent. would pay could have been ascertained almost to a mathematical certainty at the time the subscription was made and the bonds issued. Prudence on the part of the county court would have confined them to a subscription and the issuance of bonds to the amount which the fund authorized by the Legislature to be raised would pay, and fair dealing would have required the company to have refused to accept a subscription in excess of what could have been paid by it.

The intention of the Legislature in conferring the power on the county court to subscribe stock to this company to be exercised independent of, and even against the

will of the tax-payers, doubtless was to confine them to such a subscription in amount as an annual tax of one-twentieth of one per cent. on all the taxable property would pay, and it may seriously be questioned whether the bonds issued in excess of that amount have any binding force. If section 13 of the act of 1865 entered into and formed a part of contract which this court, in the case of *The State ex rel. v. Shortridge, supra,* declared it did, then it follows under the following cases heretofore decided, the holders of the bonds can only look to the fund which section 13 provides, and when that is exhausted they have no authority of law to demand of the county court that they resort to another and different fund provided for other and different purposes. In the case of *Campbell v. Polk County,* 49 Mo. 214, it was held that when a county warrant was made payable out of a particular fund the holder of such warrant, after such fund had been exhausted, could not recover against the county in an action thereon. In the case of *Pettis County v. Kingsbury,* 17 Mo. 479, it was held that a contractor who had built a bridge to be paid for out of the road and canal fund could not compel the county to pay a warrant (drawn payable out of said fund) with the common fund of the county. In the case of *Kingsberry et al. v. Pettis County,* 48 Mo. 208, the doctrine of the above cases was approved. Considering section 13 as entering into the contract in this case as fully as if it had been copied on the face of the bond, the legal effect of it is to make the bonds payable out of the special fund there provided for that purpose, and to bring this case within the principle announced in the above cases.

The contract made between the county and the Missouri & Mississippi Railroad Company was that if the county court subscribed for stock in said corporation, the company would accept bonds therefor, to be paid by funds derived from a tax of one-twentieth of one per cent., to be annually levied on the assessed value of all the taxable property in said county. The record before us shows that

this contract thus made has been fully executed. The county court made the subscription which the company accepted, and it received the bonds of the county therefor, to be paid as section 13 of the act of incorporation provided, and the tax therein authorized to be levied has been regularly levied, and the proceeds, so far as they would go, have been applied to the payment of said bonds. If the contract and the law which authorized it to be made have been fully complied with, that is an end of the matter and is all that plaintiff is entitled to. And, if for the purpose of paying these bonds, the county court of Macon county was powerless, as we have decided, to levy a tax exceeding one-twentieth of one per cent., it necessarily follows that they cannot be forced to pay them out of funds raised by taxation for a different purpose. If this were allowed to be done, it would be equivalent to enlarging the powers of the county court and giving them a right to levy a tax greater than one-twentieth of one per cent. for the purpose of paying these bonds, which this court, in *The State v. Shortridge, supra,* held they could not do, but were forbidden to do. They could no more be compelled to pay a warrant drawn upon the treasurer payable out of the general expenditure fund, out of the fund authorized to be raised by section 13, *supra,* than they could be compelled to pay out of the general fund of the county a bond issued under section 13 which provides a special fund for its payment. It will not be pretended that the holder of a warrant payable out of the general expenditure fund could compel, by mandamus, the county court to take the special fund which section 13, *supra,* provides for the specific purpose of paying the bond issued thereunder, and apply it to the payment of such warrant, and we do not see how the holder of a claim payable out of the special fund, can compel the county court to resort to the common fund of the county to pay it, any more than the holder of a warrant to be paid out of the common fund can enforce its payment out of this special fund.

The simple fact that the tax authorized to be levied will not bring sufficient money into the treasury to pay the bonds will not justify us, in the language of Judge Scott, in the case of *Pettis County v. Kingsbury*, "by a kind of judicial midwifery deliver the statute of an interpretation" which would give to the county court of Macon county a power that we have held they could not under the law exercise. If the tax provided is insufficient to meet the payment of the bonds and interest intended to be paid by it, it demonstrates either a deficiency in the law, which we have no right to remedy, or an unwise exercise of power by the county court in issuing a larger amount of bonds than the tax they were allowed to impose would pay, and the folly of the company in accepting such subscription. It may have been a hard bargain, an unwise and imprudent contract that was entered into between the county and the corporation it was contracting with. We have no power to change it or to alter its terms. Our simple duty is to enforce it as the parties themselves have made it. The time may yet come when the sanguine expectations of the promoters of the project of the development of the county and the increase of its wealth will be realized, and that a tax of one-twentieth of one per cent. will raise a fund adequate to the discharge of the obligation. We have a right to presume that a purchaser of these bonds, chargeable with knowledge of the fact that the county court had no legal power to impose a greater tax than one-twentieth of one per cent. to pay them, would be governed by it in fixing the price he would be willing to pay for such paper. We also have a right to presume, from the fact stated in the return and admitted in the answer, that only seventeen miles of the road were built, and this entirely outside of Macon county, that this fact was considered, and that the bonds brought but an inconsiderable sum.

To give section 13, *supra*, the interpretation contended for by relator, would make it operate as a practical fraud, both on the county court and the people whose faithless

agent the court was, if the fact admitted by the demurrer, that the bonds were issued against the protests of nine-tenths of the people, be true. The county court, as well as the people, had a right to conclude that the Legislature intended that, for the payment of the bonds issued by the county under the charter, the people should not be taxed beyond the limit prescribed in the act, and that if they issued an amount of bonds in excess of what they would pay, then the company, as well as others, would take them at their peril and subject to such future increase of the assessable value of property in the county as would ultimately secure their payment.

In the case of *Supervisors v. United States*, 18 Wall. 77, it is observed that " a mandamus will not be awarded to compel county officers of a State to do any act which they are not authorized to do by the laws of the State, from which they derive their powers. Such officers are the creatures of the statute law, brought into existence for public purposes, and having no authority beyond that conferred upon them by the author of their being. The office of a writ of mandamus is not to create duties, but to compel the discharge of those already existing." The same doctrine as to the character of such officers is asserted in the case of *Reardon v. St. Louis County*, 36 Mo. 560. In the light of these adjudications, and to a proper determination of the question presented by the record before us, it is important to ascertain for what purposes the common fund of the county can be applied. This is especially so in view of the act of 1874, page 45, which provides as follows: " That if any person, * * being a member of any court, * * shall knowingly vote for the appropriation, disposition or disbursement of any money or property belonging to any such * * county, other than the specific use for which the same was devised, appropriated and collected, or authorized to be collected by law, * * such person so voting for, aiding, advising or promoting such illegal appropriation,

disbursement or disposition of any such money or property, shall be deemed and taken, if such illegal appropriation, disbursement or disposition of such property be in fact effected, to have feloniously embezzled and converted said money or property; and if such illegal appropriation, disbursement or disposition be not effected, then such person so voting, advising or promoting the same shall be deemed and taken to have feloniously attempted to embezzle and convert to his own use such money or property, and on conviction thereof shall be punished by imprisonment in the penitentiary for a period not exceeding five years, and by a fine not exceeding four fold the value of such money or property."

What, then, are the purposes for which the general expenditure or common fund of a county is raised? A 3. COUNTY RAIL- proper answer to this question can only be ROAD BONDS: common fund of the returned by the law which authorizes a levy county. of taxes to produce it. That law is to be found in Wagner's Statutes, section 165, page 1193, and is as follows: "The several county courts are empowered to levy such sums as may be annually necessary to defray the expenses of their respective counties, by a tax upon all property and licenses made taxable by law for State purposes, * * but the county tax shall in no case exceed one-half of one per cent." The revenue derived from the tax thus authorized to be annually imposed, is in the very terms of the law declared to be to defray the expenses of the county, which we understand to mean the ordinary current expenses incurred in conducting the county government, such as the payment of grand and petit jurors, witnesses summoned before the grand jury, costs of criminal prosecutions, expenses in supporting the poor and insane of the county, salaries of officers, assessing and collecting the revenue, &c.

That an extraordinary indebtedness incurred by a county in subscribing stock to a railroad corporation and in issuing bonds in payment, was never intended by the

General Assembly to be embraced in the words "expenses of the county," or that they contemplated the creation of any debt for county purposes is manifest from section 166, which makes it the duty of the county court, after the assessor's book has been adjusted and returned, "to ascertain the sum necessary to be raised for county purposes, and fix the rate of taxes so as to raise the required sum." If section 165, *supra*, was intended to authorize the creation of debts or provide for their payment, the General Assembly would, doubtless, have so expressed themselves as they did in sections 1 and 7, page 1158, of the same law in providing for the levy of State taxes. Section 1 provides that "for the support of the government of the State, the payment of the State debt,   *    *    taxes shall be levied on all property, real and personal,"   *    * and section 7 provides that there shall annually be levied, assessed and collected on the assessed value of all the real and personal property subject to taxation in the State, one-fifth of one per cent. for State revenue, and one-fourth of one per cent. for the payment of all State indebtedness. The State revenue thus provided is in express terms for the support of the State government, and the county revenue provided for in section 165 is for the payment of the expenses of the county government.

That such an extraordinary indebtedness as is incurred by a county in issuing bonds in payment of a railroad subscription was not intended to be embraced in the terms "expenses of the county," is apparent when it is considered that the very same words used by the General Assembly in section 165, are to be found in section 20, Revised Statutes 1825, page 671, except in the latter act, the tax authorized was limited to 50 per cent. of the amount of State tax. The same section was continued in the Revised Code of 1835, except that the amount of tax was in no case to exceed the amount of the State tax. It is also to be found in the code of 1845, and that of 1855, the only difference being that in the former the rate of taxation was

not to exceed 34 cents, and in the latter not to exceed 40 cents on a valuation of $100. It is clear that the General Assembly in 1825 and in 1835, when they authorized the county courts to levy such tax from time to time as should be necessary for defraying county expenses, could have had no reference to such indebtedness as arises from a county bond issued in discharge of a subscription to the stock of a railroad corporation, because, at that time, there was no law to be found on our statute books authorizing such subscriptions or the issuance of any such obligations.

The first statute conferring such authority was in 1837, (Acts 1837, p. 247). The identical provisions of the codes of 1825 and 1835 having been continued or transferred on the revised codes of 1845, 1855 and 1865, we are justified in concluding that they were transferred with the same meaning as when first adopted, and that it was not designed to include in the county expenses therein provided for, bonds issued by a county in payment of a railroad subscription. This conclusion, we think, is fully confirmed by the fact that as early as 1855 the General Assembly made other and different provisions for levying a tax and creating a fund for the payment of such obligations. This will be seen by reference to sections 30, 31, 32 and 34 of the Revised Statutes 1855, volume 1, page 427, 429. Section 30 provides that it shall be lawful for the county court of any county     *     *     to subscribe to the capital stock of any railroad company duly organized under this or any other law of this State. Section 31 provides that when such subscription is made, in order to raise funds to pay it, it shall be the duty of the county court making such subscription to issue bonds or levy a special tax upon all " property and taxables " made taxable by law for State and county purposes, and upon the actual capital that all grocers and merchants may have invested in business,     *     *     to be kept apart from other funds and appropriated to no other purpose than the

payment of such subscription. The only limitation on this is, that it shall not exceed in any one year 30 per centum of the subscription. Section 32 provides, " That for such taxes levied the county court shall cause to be issued and delivered to persons paying such tax, a certificate of the amount thereof paid, which certificates shall be transferable and convertible into stock of the railroad whenever presented in amounts equal to one or more shares of the stock of such railroad." It also declares that the assessment, collection and payment of the taxes authorized shall be enforced as any other taxes for county or highway purposes. Section 34 provides that, "Any county court or city which has heretofore subscribed to the capital stock of any railroad in this State, shall be entitled to the privileges and subject to the liabilities of other stockholders in such company, and the county court or city council shall have all the rights and powers to provide funds to pay such subscription as are granted to county courts and cities under this act, and may levy a special tax to pay the interest on their bonds, or to provide a sinking fund to pay the principal."

Sections 17, 18, 19 and 21 of the General Statutes 1865, pages 338, 339, are in all respects like those contained in the revised code of 1855, except the power of the county court to subscribe is made dependent upon the assent to such subscription of two-thirds of the qualified voters of the county, expressed at a regular or special election to be held therein.

It thus appears that the fullest provisions have been made by the General Assembly for the creation of a fund distinct from the general expenditure or common fund of a county out of which to pay an indebtedness incurred by a county on account of a subscription to stock of a railroad company or bonds issued in payment thereof, which fund is to be kept separate from all other funds, and to be applied to that identical purpose and none other. These various provisions of law have been referred to for the

sole purpose of establishing the proposition that for the payment of such obligations resort could only be had to the special fund, and that it never was the intention of the Legislature that the common fund raised by taxation to defray the expenses of the county could be made chargeable with their payment, but on the contrary that such latter fund was devised, provided and intended to be charged with the payment of such ordinary expenses incurred in conducting the county government as has been hereinbefore indicated. We, therefore, think that it is manifest that the fund raised by a tax of one-half of one per cent. to defray the expenses of the county cannot be applied to the payment of relator's demand, and it follows that each member of the county court of Macon county, who would knowingly vote for so applying it, and thus diverting it from the purpose for which it was collected, would be guilty of a crime and subject himself to the penalty of the act of 1874, *supra*; and as mandamus will not issue to compel an officer to do that which he is not only not authorized, but absolutely forbidden to do, the trial court was justified in denying the writ.

Again, the demurrer was properly overruled on the ground that the effect of granting the writ would be to 4. ⸺ : ⸺. disrupt and disorganize the county government. It is shown by the return that the taxable value of the property in the county was $4,853,584, and that the revenue which a tax of one-half of one per cent. thereon would produce, is required in carrying on the county government, and after applying it to that purpose there would be nothing in the treasury with which to pay a warrant if drawn. In the case of *Price v. County Commissioners of Philadelphia County*, 1 Whar. Rep. 1, which was a proceeding to compel, by mandamus, the county commissioners to draw orders on the county treasurer in payment of certain claims against the county, it is observed by the court " that it appears by the affidavit of the commissioners that there is no money in the treasury except that which

is wanted to defray the ordinary expenses of the county. The writ of mandamus is not of course. It will be granted when a plain case of necessity is shown, and when, in the discretion of the court, it appears advisable. In this we should probably stop the wheels of the county government if the mandamus were allowed." The writ was denied.

So in the case of *Commonwealth v. Commissioners of Lancaster County*, 6 Binney 5, which was a proceeding to compel the commissioners to draw an order on the treasurer for $58,444, the court observes " that the commissioners say they ought not to draw the order because there is not money in the treasury sufficient to answer it. No doubt they speak the truth, and it appears to be cause insurmountable against issuing the writ. Whether the commissioners have done wrong in not taking measures to bring money into the treasury is not now the question. If they have, we have no right to punish them in this way. What would it signify to draw a warrant on an empty treasury? The treasurer would refuse payment, and there the matter would end." The same principle is announced in the case of *Coy v. City of Lyons*, 17 Iowa 1; *Coffin v. City of Davenport*, 26 Iowa 315; 36 Iowa 401, and also sec. 352, High Ex. L. Rem.

At the time the subscription was made and the bonds of Macon county were issued in payment of it, section 165, *supra*, was the only law authorizing the county court to levy a tax to raise money out of which to ·defray the expenses of the county, and this tax could not exceed one-half of one per cent. Under section 11, article 10, of the constitution, it is provided that the annual rate of taxation on property in counties having $6,000,000, or less, shall not, in the aggregate, exceed 50 cents on each $100 valuation. While this restriction applies to taxes for county purposes, it is expressly provided in the same section that " it shall not apply to taxes to pay valid indebtedness now existing or bonds which may be issued in renewal of such indebtedness." It is, therefore, manifest that the county court

of Macon county, (the property in said county being less than $6,000,000 in valuation,) cannot levy, nor be authorized to levy for county purposes, a tax in excess of one-half of one per cent. in each year. It is also manifest from the return that if the fund arising therefrom is diverted from such purpose the county government will be overthrown and left without support. When it is considered that the State is dependent upon the machinery of its county governments for the assessment and collection of taxes for its support, and the payment of its debt, we cannot so exercise our discretion as to direct the issuance of a writ in this case and thus establish a principle tending to overthrow the county governments, and thus to impair the power of the State to maintain itself.

The writ was properly denied to relator, because the principles of law governing courts in granting it do not accord it to him. The office of mandamus is "to compel the performance of ministerial acts, or it is addressed to subordinate judicial tribunals, requiring them to proceed to exercise their functions and give judgments in cases before them. Mandamus will not lie to compel an inferior tribunal to give a particular judgment, or to reverse its decision when it has once acted, its peculiar scope and province being to prevent a failure of justice from delay or refusal to act. When the subordinate tribunal acts judicially, it may be compelled to proceed, but it will be left to decide and act according to its best judgment. In such case the party aggrieved by the decision has his remedy either by appeal or writ of error, and mandamus never issues, except when the petitioner has a specific right and no other remedy." *State ex rel. v. Lafayette County*, 41 Mo. 224.

It, therefore, becomes important to determine whether defendants, in discharging the duties imposed upon them of ascertaining the amount due from the county and ordering a warrant on the treasurer therefor, were acting judicially or ministerially. The answer to this question is to

5. COUNTY WARRANT: mandamus against county court.

be returned by the law which imposes the duty, and it is as follows: "When the court shall ascertain any sum of money to be due from the county, they shall order their clerk to issue a warrant therefor in the following form: Treasurer of the county of——————pay to——————, ——————dollars out of any money in the treasury appropriated for county expenditures (or express the particular fund as the case may require). Given at the court house this——day of——, 18—.

By order of the county court."

A. B., President.

Attest: C. D., Clerk.

Wagner's Statutes, section 31, page 415.

Under this section, before any warrant can be drawn on the treasurer, the court must first ascertain the amount due, and the fund out of which it is to be paid, and under section 28, of the same act, it is clothed with all necessary judicial power to perform the duties thus devolved upon it. We, therefore, think that in the ascertainment of what is due from a county and the fund out of which it is to be paid, (both of which must be determined before a warrant can be drawn,) the court is acting judicially. This principle is fully enunciated in the case of the *International Bank of St. Louis v. Franklin County,* 65 Mo. 112. When a demand against a county is presented to the county court, the usual form of entry may be exemplified thus: A. B. vs. —— county. The account of A. B. for the sum of —— dollars, being presented and inquired into, it is found by the court that the sum of —— dollars is due him from the county, payable out of (the general expenditure fund, or road and canal fund, bridge fund, railroad tax fund, interest fund, as the case may require), and for which the clerk is ordered to issue a warrant. One of the judicial functions we are called upon in this proceeding to perform for the county court, viz., to determine the fund out of which relator's claim is payable, and then command the court, not to proceed and render a judgment, but to execute the

4—68

judgment rendered by this court. This, under the authorities cited, we cannot do. The utmost that we could do would be to direct the county court to proceed and render judgment when they refused to act, and if in acting they render a wrong judgment, the remedy is by appeal, which is allowable under our statute, from all judgments and orders from the county court when not expressly forbidden.

But conceding, only for the argument, that the county court in ordering a sum of money ascertained to be due from the county to be paid out of a particular fund, is acting ministerially, still the relator would not be allowed the writ of mandamus unless he had no other remedy, it being well settled that such writ only issues when the party has no other remedy. If in such case the county court err in directing the payment of such claim out of the wrong fund, our statute affords an ample remedy by appeal from the wrongful order, for it expressly provides that the " circuit courts shall have appellate jurisdiction from the judgments and orders of county courts and justices of the peace, in all cases not expressly prohibited by law." Wag. Stat., sec. 2, p. 430. It has been determined that this appellate jurisdiction of the circuit courts can be exercised by appeal. *County of Boone v. Corlew*, 3 Mo. 12; *Lewis v. Nuckolls*, 26 Mo. 279; *Lacy v. Williams*, 27 Mo. 280. So that it appears, whether the county court, in ordering the payment of a sum of money ascertained to be due from the county out of a particular fund, is acting either judicially or ministerially, the relator would not, in either case, be entitled to the writ, for if defendants were acting in the former capacity we cannot control their judicial discretion by directing them to give a particular judgment, as the judgment that they shall render is for them and not for us to determine; if acting in the latter capacity, and they make an erroneous order, the party aggrieved has his remedy by appeal. It, therefore, follows that in either instance the writ of mandamus must be refused, in the first, because we cannot thus interfere with judicial discretion, and in

OCTOBER TERM, 1878.　51

The State ex rel. Watkins v. Macon County Court.

the latter because there being a remedy by appeal, in such case mandamus does not lie. *United States v. Lawrence*, 3 Dall. 42; *Griffith v. Cochran*, 5 Binney 87; 14 East 395.

We have been cited to the case of *United States v. Clark County*, 6 Otto 211, in support of relator's case. The opinion in that case, emanating from the highest recognized authority in this country, did not meet with the sanction of a large minority of the court. This, in connection with the fact that it was expressly decided in the case of the *State v. Shortridge, supra*, that section 13, *supra*, of the act incorporating the Missouri & Mississippi Railroad Company was a limitation on the power of the county court to levy a tax beyond the amount therein specified, and the further fact that the various acts to which we have referred herein, were neither called to the attention of the court nor considered, we are driven to a different conclusion from that announced in that case.

*6. THE CASE OF THE UNITED STATES EX REL., &C, V. CLARK COUNTY COURT, 96 U. S. REP 211, DISAPPROVED.*

The judgment of the court in overruling the demurrer and refusing the writ, is affirmed, in which SHERWOOD, C. J., and HENRY, J., concur. Judge HOUGH concurs in a separate opinion. Judge NAPTON having been of counsel in the case of *State ex. rel. v. Shortridge*, did not sit.

AFFIRMED.

HOUGH, J., CONCURRING.—I concur in affirming the judgment of the circuit court refusing the writ of mandamus, but do not concur in all the reasons given therefor. I adhere to the decision of this court in the case of the *State v. Shortridge*, 56 Mo. 126, and if this were a proceeding to compel the county court to levy a tax to pay the bonds, it would be directly in point. I doubt, however, whether we are at liberty to go behind the judgment in favor of the relator, and inquire into the cause of action, or obligation upon which it is founded, and then say that the judgment must be paid according to the terms of the contract on which it is based. The judgment should have

followed the contract; and in that it does not, it is an erroneous judgment; it is a general judgment entitling the relator to a general execution, and if the county has property subject to execution, it might be sold thereunder. The contract is merged in the judgment, and it cannot, in my opinion, now be looked to to determine the rights of the relator under his judgment. Sufficient reasons are given in the opinion of the court for refusing the writ without going behind the judgment in favor of the relator. *Vide.* *State ex rel. Zimmerman v. The Justices of Bollinger County Court et al.,* 48 Mo. 475.