WEBSTER P. BUSHNELL, CHARLES C. McCANN, AND DONALD H. BUSHNELL, DOING BUSINESS AS A COPARTNERSHIP UNDER THE NAME OF BUSHNELL & McCANN, APPELLANTS, v. MISSISSIPPI AND FOX RIVER DRAINAGE DISTRICT OF CLARK COUNTY, MISSOURI, AND CHARLES KRUEGER, CHRISTIAN GRAF, J. W. DIENST, HARRY BENNETT, AND I. W. HOEWING, SUPERVISORS OF SAID MISSISSIPPI AND FOX RIVER DRAINAGE DISTRICT, RESPONDENTS.—111 S. W. (2d) 946.

St. Louis Court of Appeals. Opinion filed January 4, 1938.

*J. E. Newkirk, Hiller & Hiller* and *T. L.* and *L. J. Montgomery* for appellants.

*E. W. McManus* on brief.

924

*Rendlen, White & Rendlen* and *B. F. Jones* for respondents.

McCULLEN, J.—This action in *mandamus* was instituted by appellants in the Circuit Court of Clark County, Missouri, to compel the respondent drainage district and the members of its board of supervisors to levy a tax to pay a judgment that had been previously rendered against said drainage district in favor of appellants. After a trial, the court quashed the alternative writ which it had theretofore issued and denied a peremptory writ. The claimants took an appeal to the Supreme Court. That court held it did not have jurisdiction and transferred the cause to this court. [See Bushnell et al. v. Mississippi & Fox River Drainage District (Mo.), 102 S. W. (2d) 871.]

The cause was submitted to the trial court upon an agreed statement of facts which constitutes the only evidence in the case. It appears from the agreed statement of facts that respondent district was duly incorporated as a drainage district on October 8, 1915, under the provisions of the Laws of Missouri, 1913, page 232, et seq., which, with subsequent amendments, is now Chapter 64, Revised Statutes Missouri, 1929, section 10743, et seq.; that the organization of said drainage district was undertaken and the legal proceedings in connection therewith were had in the Circuit Court of Clark County, Missouri. The individual respondents herein are the duly elected and qualified supervisors of said drainage district. It further appears that the district adopted a plan for reclamation; that commissioners were appointed to assess the benefits and appraise the damages and their report was duly filed in said court; that numerous objections were filed to said report, and in the year 1920 the report was apparently lost from the files of the court; that no order was ever entered in any court approving or disapproving the report mentioned; that on November 8, 1915, the board of supervisors levied a uniform tax

of fifty cents per acre on the land in the districts to pay expenses incurred in organizing the district, assessing benefits and damages, and to pay other expenses necessary to be incurred, as provided by the statutes of Missouri; that the major portion of said tax was collected and paid out, but that a number of landowners in the district failed and refused to pay said tax and that some of said taxes have never been collected by the district; that no suit has ever been prosecuted in behalf of the district against said delinquent taxpayers; that no drainage works or structures of any kind have been made or erected in said district; that no assessment or ascertainment of damages has ever been made and that the district has never been dissolved by order of any court.

It further appears from the agreed statement of facts that on July 31, 1929, appellants Bushnell and McCann were employed as engineers by the district through its duly elected and acting board of supervisors under a written agreement to prepare plans and specifications and perform engineering services in connection with a proposed amended plan of reclamation and proceedings to extend the boundaries of the district, which amended plan required entirely new surveys of the district and included hundreds of additional acres of land; that on August 29, 1929, E. W. McManus was duly employed as attorney for the district by the same board of supervisors under a written contract of employment; that pursuant to their contracts of employment, Bushnell and McCann, as engineers, and McManus, as attorney, performed services for the district, said services consisting in general of making surveys and preparing plans for an amended plan of reclamation and for enlarging the boundaries of the district, and legal services in connection therewith. These parties also paid out money for expenses. The amended plan of reclamation was never approved or carried into effect. The petition for the enlargement and changes was denied by the Circuit Court of Clark County.

The agreed statement of facts further shows that on October 27, 1931, the drainage district, through its board of supervisors, entered into a compromise settlement with Bushnell and McCann whereby the board agreed to pay and Bushnell and McCann agreed to accept $4000 in full for their services; that the board also made a compromise settlement with McManus whereby the board agreed to pay and McManus agreed to accept $2000 in full for his services. Subsequently, McManus assigned to appellants herein all his claim under said compromise agreement and thereafter appellants brought suit in the Circuit Court of Clark County pleading said compromise settlements and the assignment. After due notice to all parties interested, judgment was duly entered on April 5, 1932, in said court in favor of appellants herein as plaintiffs in said suit, and against the drainage district as defendant therein, for the sum of

$6000 with interest and costs, the judgment being based upon the compromise agreements. It further appears that thereafter payment having been refused, plaintiffs' caused an execution to be issued, which was returned unsatisfied, the drainage district having no funds with which to pay said judgment; that appellants made demand upon the board of supervisors to levy an assessment to satisfy their judgment and that the demand was refused. Thereupon this suit in *mandamus* was instituted to compel the drainage district and its board of supervisors to levy and collect an additional and sufficient tax to pay appellants' judgment.

Appellants contend that the judgment in their favor, upon which this proceeding in *mandamus* is based, is conclusive as to every matter which was offered or could have been offered to sustain or defeat the demand on which their claim was based; that a judgment being a debt of the highest form operates as a merger and bar of all included claims; that respondent drainage district is a municipal corporation, and that *mandamus* is the proper remedy to recover on the judgment against it. They further contend that where a *quasi-*municipal corporation has the power to enter into contracts for services or materials, there is an implied power to levy and collect and pay over funds necessary to pay the agreed price therefor.

Respondents contend that appellants are conclusively presumed to know that public agents such as drainage districts and their board of supervisors have only such power to levy taxes as is expressly given by statute. Respondents further contend that no tax can be levied against the landowners in the respondent drainage district above fifty cents per acre until after the report of the commissioners appointed by the circuit court assessing benefits and damages upon a hearing, after due notice to the landowners, has been approved; that the only authority and right to impose or levy any drainage tax exists by reason of a statute so providing; that absent such positive statute, no such right exists and that there is no statute authorizing the levying of a tax such as is sought by appellants herein.

Appellants argue that since there is no charge of irregularity of any kind whatsoever made against the judgment which appellants obtained against the respondent drainage district or against the compromise settlement agreement upon which the judgment is based, respondents are precluded from setting up the want of power to levy the additional tax sought by appellants to pay such judgment. They insist that if any such limitation upon the power of respondents to levy such additional tax existed it should have been asserted by respondents as a defense in the action wherein appellants obtained their judgment against the respondent drainage district.

It is true, as appellants contend, that our Supreme Court has held that all causes of action, whether in contract or in tort, are merged

in a judgment, and that the judgment itself becomes a debt of record of the highest form, and that executions or *mandamus* proceedings in aid thereof are for the purpose of collecting the judgment and not the cause of action merged in the same. [State ex rel. Emerson v. City of Mound City, 335 Mo. 702, 73 S. W. (2d) 1017.] It is also true, as appellants contend, that a valid judgment is a finality as to the claim or demand in controversy and concludes the parties and those in privity with them, not only as to every matter which was offered or received to sustain or defeat the claim or demand, but as to any admissible matter which might have been offered for that purpose. [Cromwell v. County of Sac, 94 U. S. 351, 352; Mississippi & Fox River Drainage Dist. v. Ruddick, 228 Mo. App. 1143, 64 S. W. (2d) 306; U. S. v. New Orleans, 98 U. S. 381; Ralls County v. U. S., 105 U. S. 733.]

The judgment obtained by appellants is undoubtedly conclusive upon respondents as to all matters of defense that could have been properly made against appellants' claim, but, as we view the case, it does not preclude respondents from asserting in this *mandamus* proceeding the absence of authority on their part to levy the additional tax sought by appellants to pay the claim. The suit wherein the judgment was obtained by appellants undoubtedly determined finally their right to a judgment for their services, but such judgment, unquestioned and valid though it be, cannot supply authority to a creature of statute such as the respondent drainage district to levy taxes if such authority is not expressly granted by the statutes to which it must look for its power and authority to levy such taxes. The want of power to assess such additional taxes could not properly have been raised by respondents in the suit brought against them by appellants for the reason that want of power to levy a tax to pay the judgment would have constituted no defense to appellants' cause of action on the contracts for the services rendered. The presence or absence of power in the board of supervisors to levy the additional tax to pay such judgment could not in any manner affect appellants' right to obtain the judgment for the services they rendered, and hence would not have been any defense in that suit. A cause of action entitling appellants to obtain the judgment which they did obtain is one thing, but the power to levy a tax to pay such judgment is quite a different matter. If it were possible for respondent drainage district to have in its possession any property subject to execution, appellants would undoubtedly have the right to have execution levied on such property to satisfy their judgment, but if they want the high governmental power to tax the lands of property owners in the district exercised in their favor to pay the judgment, they must show that the law authorizes such tax to be levied and that they occupy a *status* under the law entitling them to have the power exercised for that purpose. It is our view that

respondents are not estopped to assert in this *mandamus* proceeding that they have no authority to levy the additional tax sought by appellants. The question for determination, therefore, is whether respondents have or have not authority to levy an additional tax to pay appellants' judgment in view of the conceded fact that a tax of fifty cents per acre has already been levied to pay the preliminary organization expenses of the district.

An examination of the statutes involved herein shows that there are four sections thereof which authorize the levying of assessments by drainage districts on lands therein to pay for improvements or works done or erected by them, including payment of engineers' and attorneys' fees.

Section 10750, Revised Statutes Missouri, 1929 (Mo. Stat. Anno., sec. 10750, p. 3476), authorizes the board of supervisors to employ engineers for the district, but confers no taxing power.

Section 10752, Revised Statutes Missouri, 1929 (Mo. Stat. Anno., sec. 10752, p. 3478), in so far as it is necessary to set forth here, provides that the board of supervisors "shall as soon as elected and qualified, levy a uniform tax of not more than fifty cents per acre upon each acre of land within such district, as defined by the articles of association, to be used for the purpose of paying expenses incurred . . . in organizing said district, making surveys of the same and assessing benefits and damages and to pay other expenses necessary to be incurred before said board shall be empowered by subsequent provisions of this article to provide funds to pay the total cost of works and improvements of the district. . . . In case the sum received from such assessment exceeds the total cost of items for which the same has been levied, the surplus shall be placed in the general fund of the district and used to pay cost of construction: Provided, that if the corporation of the district be dissolved, as provided for in a subsequent section of this article, the amount of surplus, if there be any, shall be prorated and refunded to the landowners paying such uniform tax."

A number of sections following the above section 10752 provide for the appointment of commissioners to assess benefits and damages, for the filing of exceptions to the report of such commissioners, and a hearing thereon by the circuit court in a summary manner, and, if the court finds the project is feasible and that the benefits exceed the damages, the report is approved and the board of supervisors is authorized to levy a tax on the property in the district in accordance with the benefits.

Section 10757, Revised Statutes Missouri, 1929 (Mo. Stat. Anno., sec. 10757, p. 3484), provides for the filing of exceptions by the owners of land in the district, and the procedure in relation thereto and other matters not necessary to refer to here. This section does not confer any taxing power on the board of supervisors.

Section 10759, Revised Statutes Missouri, 1929 (Mo. Stat. Anno., sec. 10759, p. 3486), provides that after the list of lands and other property, with the assessed benefits and the decree and judgment of the court, have been filed in the office of the county recorder as provided in section 10757, then the board of supervisors shall, without any unnecessary delay, levy a tax of such portion of said benefits as may be found necessary by said board to pay the cost of the completion of the proposed works and improvements as shown in the plan of reclamation. The last-named section expressly provides that "The said tax shall be apportioned to and levied on each tract of land or other property in said district in proportion to the benefits assessed and not in excess thereof."

Section 10770, Revised Statutes Missouri, 1929 (Mo. Stat. Anno., sec. 10770, p. 3499), provides that the board of supervisors shall employ an attorney to act for the district and to advise said board, and that such employment shall be evidenced by an agreement in writing, but it does not confer any taxing power.

Section 10780, Revised Statutes Missouri, 1929 (Mo. Stat. Anno., sec. 10780, p. 3505), provides that the district shall be dissolved if at any time before the board of supervisors has adopted a plan for reclamation the owners of a majority of the acres of land within the district petition the circuit court for such dissolution, provided, that upon the filing of any such petition. the circuit court shall, before dissolving the district, ascertain and determine the amount of money in the treasury of or owing to the district and the amount of all warrants issued and unpaid by it, and the amount of the debts and other obligations owing to it; "and, if said amount of money, in the treasury and owing to said corporation, is in excess of the amount of said warrants, debts and other obligations, said circuit court shall order said warrants, debts and other obligations to be forthwith paid and discharged, and said excess divided among all the owners of land in said drainage district who paid the same thereto, in the proportions in which they paid the same; but if said amount of money, in the treasury and owing to said corporation, is not sufficient to pay and discharge said warrants, debts and other obligations, then said circuit court shall order said board of supervisors to levy and collect a uniform tax, upon each and every acre of land within said drainage district, sufficient in amount to pay said deficiency, and to thereupon pay the same."

Section 10781, Revised Statutes Missouri, 1929 (Mo. Stat. Anno., sec. 10781, p. 3506), provides that if, after determining the objections made to the commissioners' report, the court shall find that the estimated costs of works and improvements as reported by the board of commissioners, or as amended by the court, exceed the estimated benefits, the court shall render a decree "declaring the incorporation of the district to be dissolved as soon as all costs incurred, which

shall include court costs and all obligations and expenses incurred in behalf of the district by the board of supervisors shall have been paid, and if the uniform tax levied under the provisions of section 10752 of this article be found insufficient to pay all such costs, the board of supervisors shall make such additional uniform tax levies as will be necessary to pay such deficiency."

In the case at bar the agreed statement of facts shows that there has never been a judicial determination of benefits and damages in the district in accordance with the provisions of section 10759, and we find no authority in the statutes authorizing the board of supervisors to levy a tax of more than fifty cents per acre until after the report of the commissioners appointed by the circuit court to assess benefits and damages has been approved.

According to the agreed statement of facts no order has ever been entered in any court approving or disapproving the report of the commissioners. In Little River Drainage Dist. v. St. Louis M. & S. E. R. R., 236 Mo. 94, 110, 139 S. W. 330, the Supreme Court said:

"The law does provide for full and complete information and notice of the 'plan for drainage' before the assessment of benefits, and gives to every landowner the right to be heard and to a trial in court before a charge can be placed against his land . . ."

It is clear that section 10759 does not authorize the levying of the additional tax sought herein by appellants under the conceded facts, which show that the district's *status* is not within the scope of that section. Nor can authority to levy the additional tax sought by appellants be found either in section 10780 or in section 10781. Section 10780 provides for the levying of assessments upon the dissolution of the district upon petition by the owners of a majority of the acres of land within the district filed in the circuit court. Section 10781 provides for the levying of assessments upon dissolution of the district by order of the court if the court shall find, after determining the objections made to the commissioners' report, that the estimated costs of works and improvements as reported by the commissioners, or as amended by the court, exceed the estimated benefits under section 10781. The authority to levy the tax under these sections cannot be invoked in this case in view of the agreed statement of facts wherein it is shown that the district has not been dissolved. Furthermore, there is nothing to show that any steps are being taken or have ever been taken to have the district dissolved.

In view of conceded *status* of the district under the agreed statement of facts showing that no drainage works, drains or reclamation structures of any kind have ever been made, created or erected, and no assessment or ascertainment or establishment of benefits and damages has ever been had or made, and further showing that dissolution of the drainage district has never been ordered by any court, we hold that the board of supervisors has no authority to levy a tax

under the power granted in section 10759, section 10780 or section 10781.

The only other section which authorizes the exercise of the taxing power is section 10752, which provides for the levying of a tax to pay the organizing expenses of the district. If authority to levy the additional tax sought by appellants is not found in sections 10752, then the board of supervisors has no power to levy such additional tax. To pay such organizing expenses, section 10752 authorizes the board of supervisors to levy ''a uniform tax of not more than fifty cents per acre upon each acre of land within such district.'' We do not see how there can be any power to levy a tax of more than fifty cents per acre under this section in view of the explicit and express command of the statute that the tax authorized to be levied shall be ''not more than fifty cents per acre.'' It seems clear that the Legislature, in conferring the taxing power upon drainage districts such as respondent district to raise funds for the payment of organization expenses, intended to limit them strictly to fifty cents per acre for that purpose. The Legislature obviously intended to protect the taxpayers of such districts from being called upon to pay more than a limited amount to meet the expenses of preliminary organization thereof, recognizing undoubtedly that such districts sometimes ''die a-borning.'' The tax for organizing purposes under section 10752 is a *uniform tax of not more than fifty cents per acre,* whereas any tax above that amount must be based upon benefits and damages after a hearing or upon dissolution of the district. It must be remembered that the respondent district has never reached the state of actual operations as a drainage district. It certainly was not the intention of the Legislature that taxpayers should be subject to any tax above fifty cents per acre for organization expense, for the amount to be levied for that purpose is explicitly and plainly limited to that sum. The fact that the fund created by the tax of fifty cents per acre was inadequate to discharge the obligation of paying the organization expenses of the district, under which classification the services rendered by appellants must be placed, cannot confer upon the board of supervisors or upon any court the power to provide any other fund, or to order the levying of a tax under other sections of the statute which have nothing to do with the expenses of organizing the district. [State ex rel. Watkins v. Macon County, 68 Mo. 29, 37.]

Drainage districts, being creatures of statute, have only such power and authority to levy taxes as are granted by the statutes governing them. In the levying of a tax they exercise such power only in the manner and to the extent so authorized. [Birmingham Drainage Dist. v. Chicago B. & Q. R. Co., 274 Mo. 140, 202 S. W. 404.]

In making their contract of employment with the district, appellants are presumed to have known that they were dealing with public agents whose authority and power are strictly limited and prescribed

by law, outside of which such public agents are utterly powerless to act. [State ex rel. Watkins v. Macon County, 68 Mo. 29, 37; Cheeney v. Inhabitants of the Town of Brookfield, 60 Mo. 53.]

It has been held that a drainage district is a municipal corporation. [Houck v. Little River Drainage Dist., 248 Mo. 373, 154 S. W. 739.] The drainage district law is a code unto itself, independent of the civil code, and courts must follow the provisions of the statutes governing such districts. [In re Mississippi and Fox River Drainage Dist., 270 Mo. 157, 173, 192 S. W. 727, 732; State ex inf. McAllister v. Norborn Land Drainage Dist., 290 Mo. 91, 131, 234 S. W. 344, 348.]

The general rule as to the exercise of the taxing power, as concisely stated by our Supreme Court in the early case of City of Kansas v. Hannibal & St. J. R. Co., 81 Mo. 285, 293, has been quoted with approval by our Supreme Court *in banc* in Keane v. Strodtman, 323 Mo. 161, 167, 18 S. W. (2d) 896, 898, as follows:

''Generally speaking this rule obtains that: 'The power to tax is a high governmental power . . . and when the Legislature grants that high power to another tribunal, it can only be exercised in strict conformity to the terms in which the power is granted, and a departure in any material part will be fatal to the attempt to exercise it.' ''

The fact that the Keane case, *supra*, was not a drainage district case does not militate against the applicability of the doctrine to the case at bar.

In Garden of Eden Drainage Dist. v. Bartlett Trust Co., 330 Mo. 554, 564, 50 S. W. (2d) 627, 631, which was a suit based on tax bills issued by a drainage district against lands within the district, our Supreme Court, in discussing the statute under consideration, said:

''The power of levying taxes is vested in the board of supervisors after the corporate district is organized. This board is authorized by section 10752, Revised Statutes 1929, to at once levy a uniform tax of not exceeding fifty cents per acre on the lands of the district for the purpose of paying the preliminary costs of forming same, making the survey, etc., leading up to the adoption of the claim for reclamation, the assessment of benefits and damages, and other expenses up to the time the board is empowered to provide the funds 'to pay the total cost of works and improvements.' These taxes, other than the tax of not exceeding fifty cents per acre for preliminary costs, are to be assessed, through a board of commissioners appointed by the circuit court and reporting to it, on the basis of benefits and damages. A hearing is then had by the court, after due notice, on the report of the commissioners, at which any interested party may file objections thereto and be heard thereon; that is, 'he may file exceptions to said report or to any assessment for either benefits or damages.' Certainly the act in question affords the landowner at this stage of the proceeding an opportunity to be heard as to what, if any, benefits (less damages, if any) are to be assessed against his

land, and on this basis the taxes to pay the costs of the works and improvements, together with maintenance taxes, are assessed and levied.''

State ex rel. Watkins v. Macon County Court, 68 Mo. 29, was a *mandamus* proceeding originally instituted in the Circuit Court of Macon County against the justices of the county court of said county to compel them to draw a warrant on the county treasurer payable out of the general expenditure fund of the county. The relator therein had obtained judgment in the Circuit Court of Macon County against said county on certain bonds which had been issued and delivered to the Missouri & Mississippi Railroad Company in payment of a subscription of stock to said company made under the charter of said company. It was shown that the judgment was unpaid and that the county had no property out of which any part of the judgment could be made on execution. It further appeared that the authorized levy of one-twentieth of one per cent. of the assessed value of the taxable property of the county was wholly insufficient to pay the judgment and other judgments then subsisting against the county on other bonds issued to said company, and that the defendants had refused to issue their warrant in discharge of said judgment. In that case the Supreme Court held that one who takes county bonds issued under a statute limiting the rate of taxation that may be imposed for their payment is chargeable with knowledge of such limitation, and that the county court could not be compelled by *mandamus* to appropriate other funds in the county treasury, raised for other purposes, to the payment of such bonds, and that neither the fact that the claim had been reduced to judgment nor the fact that the specific fund provided was inadequate could change the rule. Incidentally, it is to be noted that the Supreme Court, in the Watkins case, *supra,* refused to follow the case of U. S. v. Clark County, 96 U. S. 211, 24 L. Ed. 628, relied upon by appellants in the case at bar. Touching upon the insufficiency of the tax in that case, the court said:

''If the tax provided is insufficient to meet the payment of the bonds and interest intended to be paid by it, it demonstrates either a deficiency in the law, which we have no right to remedy, or an unwise exercise of power by the county court in issuing a larger amount of bonds than the tax they were allowed to impose would pay, and the folly of the company in accepting such subscription. It may have been a hard bargain, an unwise and imprudent contract that was entered into between the county and the corporation it was contracting with. We have no power to change it or to alter its terms. Our simple duty is to enforce it as the parties themselves have made it.'' [State ex rel. Watkins v. Macon County Court, 68 Mo. l. c. 40.]

In the case at bar appellants have made an effort to distinguish the Watkins case, *supra,* from the case at bar on the facts, but we

are' of the opinion that the doctrine laid down by the court in that case is applicable to the case at bar notwithstanding that the Watkins case was a suit to compel payment of bonds out of the general fund of the county, whereas the case at bar is a suit to compel the levying of an additional tax to pay a judgment for services rendered to a drainage district. The question involved in the Watkins case, as in the case at bar, was a limitation upon the exercise of the taxing power.

We are unable to find any authority in the statutes governing respondent drainage district authorizing the levying of an additional tax to pay the judgment of appellants under the agreed statement of facts, which shows that their services must necessarily be classified as coming within section 10752. The district has already exhausted the power to tax conferred upon it by that section by having levied a tax of fifty cents per acre, which is the limit allowed therein. It necessarily follows that the district cannot be compelled to levy the additional tax sought, for *mandamus* does not lie to compel the doing of a thing which respondents have no authority to do. [State ex rel. Kent v. Olenhouse et al., 324 Mo. 49, 23 S. W. (2d) 83.]

The judgment of the circuit court is affirmed. *Hostetter, P. J.*, and *Becker, J.*, concur.