THE STATE OF MISSOURI *ex rel.* J. H. GOURLEY, Respondent, v. THE MAYOR, COMMON COUNCIL *et al.,* OF KANSAS CITY, MISSOURI, Appellants.

Kansas City Court of Appeals, April 30, 1894.

1. **Mandamus**: LEVY TO PAY EXPENSE JUDGMENT. A relator holding a judgment payable out of the expense fund of Kansas City need not bring a *mandamus* to compel the levy of a tax to pay such judgment but is entitled to a *mandamus* to pay his said judgment, especially when there is money in the treasury subject to appropriation for the payment of his judgment.

2. ———: PRIMA FACIE CASE: CURRENT EXPENSE. That the money in the treasury is unappropriated makes a *prima facie* case for him; that such money is necessary to meet current expenses is a defense in a proper case.

3. **Kansas City Charter**: APPORTIONMENT V. APPROPRIATION. Under the charter of Kansas City, the annual apportionment of the revenues of the year among the different funds does not amount to an appropriation of such funds, and funds so apportioned still remain in the appropriating power of the mayor and common council; and may be reapportioned and appropriated.

4. ———: EVIDENCE: ORDINANCE. The annual apportionments of the revenues of Kansas City should be shown by ordinance and not by parol.

*Appeal from the Jackson Circuit Court.*—HON. JAMES GIBSON, Judge.

AFFIRMED.

*F. P. Walsh* and *F. F. Rozzelle* for appellants.

(1) It is the duty of the mayor and common council of Kansas City, within the first month of each fiscal year, to apportion the revenue to be raised for such year to the expenses of the several departments and for all public works under proper headings, and for such

other objects as may be necessary to provide for; and
no payment can be made from any revenue or fund
account in excess of the amount actually collected and
in the treasury. Charter of Kansas City, 1889, art. 3,
sec. 2, p. 19. (2) "Apportion" means to set apart for
a specific use and purpose. Am. and Eng. Encyclo-
pedia of Law, vol. 1; *McConnell v. Wilcox*, 2 Ill. 360;
*State of Louisiana v. Bordelon*, 6 La. 68. (3) Revenue
funds set apart must be used strictly for the purpose of
the fund to which they belong and where a party has a
judgment against a county, the proper remedy is *man-
damus* to levy a special tax to pay that judgment.
*Flagg v. Palmyra*, 33 Mo. 440; *State ex rel. v. Rainey*,
74 Mo. 229. *Mandamus* will not be granted when the
only money in the treasury is that wanted to defray the
ordinary and current expenses of the county. *Price v.
County Commissioners*, 1 Wharton, 3; *State ex rel.
Watkins v. Macon County Court*, 68 Mo. 29; *State v.
Hays*, 49 Mo. 604. (4) The court can not by *man-
damus* take money from the fund as set apart by the
yearly apportionment or action of the council and put
the same into the expense fund out of which this judg-
ment, if paid at all at this time, must be paid. *Chase
v. Morrison*, 40 Iowa, 620; 25 Wendell, 604; *Allen v.
Trenk*, 32 Mich. 96; *Mitchell v. Speer*, 39 Ga. 56; *Day
v. Callon*, 39 Cal. 593; *Carr et al. v. State ex rel.*, 127
Ind. 209; *Mayor and Common Council of Michigan City
v. Roberts et al.*, 34 Ind. 477; *Weston v. Nathan Dale*, 51
Me. 461; *People ex rel. v. Johnson*, 100 Ill. 543. (5)
The writ of *mandamus* will not be granted to compel
the corporate authorities of a village or other body to
do an act they have never been asked to do. *People v.
Hyde Park*, 117 Ill. 462; *Kemmerer v. State*, 7 Neb.
133; *People v. Whitmore*, 4 Mich. 27; *Dobbs v. Stauffer*,
24 Kan. 12; *State v. Hall*, 17 Minn. 429; *Bryson v.
Spaulding*, 20 Kan. 427; *State v. Eberhardt*, 14 Neb.

201; *People v. Walker*, 9 Mich. 328. It is first indispensable to demand of the party against whom the application is to be made to perform the duty. Redfield on Railways [5 Ed.], 659, note 6; *State v. Governor*, 1 Dutch (N. J.), 331; *State v. Lehre*, 7 Rich. (S. C.) 234; *State v. Davis*, 17 Minn. 429.

*W. A. Alderson* for respondent.

(1) The "apportionments of the revenue to be raised for such year to the expenses of the several departments," which are to be made "by ordinance" and "within the first month of each fiscal year," constitute only a proportionate designation or division of the estimated revenue for the fiscal year to the several departments, which action is not final and irrevocable; and that the common council of Kansas City does, by ordinance, many times during every year modify and change such apportionments as the exigencies may require, is so notorious as to be the subject of judicial notice. If the apportionments required by the charter are beyond the control of the municipal authorities, then one fund might be great in cash, while another department, having exhausted its money, would have to close and quit business; a result that shows the absurdity of counsel's contention. (2) Appropriation is much more than a division into proportionate parts; the "appropriation of public money" is its disposition from the treasury by law; it means the application of the funds; it is to designate or destine a fund for the payment of a particular demand; to take to one's self in exclusion of others. The appropriation of a public fund means "an act by which a named sum of money has been set apart in the treasury and devoted to the payment of a particular claim or demand." In reference to public revenues it means the disposition of the

public moneys from the treasury by law. *Stratton v. Green*, 45 Cal. 149; Abbott's Law Dict; Black's Law Dict.; *McConnell v. Wilcox*, 2 Ill. 344. This case is cited by appellants under point 2, but erroneously. (3) There are but few rules without their exceptions; and the principle that demand must be made before suing out the writ of *mandamus* where the matter in controversy is only of private interest and concern is flexible and yielding. In the proceeding at bar no demand at all was necessary. "If the defendant has shown by his conduct that he does not intend to perform the act, and that fact is apparent to the court, it would be a work of supererogation to require that a demand should be made for its performance. Here the only effect of issuing the *mandamus* is to require the authorities of the town to do what by law they are obliged to do." *People ex rel. v. Supervisors*, 68 N. Y. 114; *Motter v. Primrose*, 23 Md. 501, 502; *Fisher v. Charleston*, 17 W. Va. 595, 618; High's Ex. L. R. secs. 377, 377b. Nor can want of demand, if necessary, be first urged on appeal, or after the merits of the case have been discussed. Demand of the comptroller, if required at all, was sufficient. DRUMMOND, J., in *United States ex rel. v. Brooklyn*, 10 Biss. 466; *Chicago v. Sansum*, 87 Ill. 182; High's Ex. L. Rem., sec. 365; *State ex rel. v. Slavens*, 75 Mo. 508.

SMITH, P. J.—This is a proceeding in which the relator has invoked the extraordinary remedy of *mandamus* to compel the respondents, who are appellants here, to pay a judgment. The return of the respondents interposes the defense that there "are no funds in the city treasury available for the payment of the judgment." It appears from the record before us that the relator recovered a judgment against the city for the sum of $300 before a justice of the peace, which

was subsequently declared to be valid by a superior court of general jurisdiction; that the relator caused one or more executions to be issued on his judgment, which were returned unsatisfied; that the relator applied to the comptroller, auditor, counsellor and perhaps other officers of the city, to have payment made of said judgment, but those officers declined to pay the sum or to take any steps in that direction on the alleged grounds that the judgment was unjust. We have the strange anomaly of a city, according to the last national census and other public documents at which we may look, whose population is nearly one hundred and fifty thousand, and whose taxable property is of the valuation of something like sixty million dollars, invested by the constitution of the state with power to levy a tax for city purposes of one hundred cents on the hundred dollars valuation, and yet, with this ample source of revenue at its command, to say nothing of the other additional resources which are given it by its charter, this city pleads by the return of its officers that it has no money in its treasury available to pay this paltry judgment. The record shows that when the court below ordered the peremptory writ that there was then $800,000 in the city treasury. It further appeared that up to that time, which was in the third month of the fiscal year, from land and personal property tax and merchants' licenses alone, there had been collected and paid into the city treasury $705,065.19. The relator's claim having been established by the highest record evidence known to the law, it was the duty of the respondents to appropriate money for its payment from the funds in the treasury applicable for that purpose, if any there was. The liability of the city having already been judicially determined, the only duty remaining for it to perform was to provide for the payment of the same.

The respondents contend that the relator in this proceeding must go out of court, and, if after that, he still desires to have satisfaction of his judgment, he must bring another writ to compel the respondents to levy a tax for the payment of the judgment. We think the inference is fairly deducible from the record that the rate of taxation already levied by the city is the maximum of that allowed by the constitution, so that the suggested remedy would be futile. It results, therefore, that there will be a failure of justice unless the writ commanding the respondents to pay the judgment out of the funds in the treasury of the city which can be legally appropriated for that purpose, be upheld by us.

It appears that there is a large amount in the treasury independent of the sinking fund and the bond and interest fund. It is not denied that the relator's judgment would have been properly payable out of the expense fund of the city, had there been any money in that fund with which to do so. To provide for the payment of such expenses is one of the very purposes for which respondents are invested with the power to raise revenue by levying and collecting taxes on the various objects and subjects of municipal taxation. The relator's showing that there was money in the treasury, *prima facie*, subject to appropriation for the payment of his judgment was sufficient to warrant relief. It had the effect to cast upon the respondents the burden of showing some reason why such money was not available. They plead that the money in the treasury was needed to defray the ordinary and current expenses of the city. Such a defense in a proper case would justify the refusal of relief. *State v. Macon Co. Ct.*, 68 Mo. 29; *State v. Hays*, 46 Mo. 604; *Commonwealth v. Commissioners*, 6 Bissell, 5; *Commonwealth v. Commissioners*, 1 Whart. 1; *Lancaster v. State*, 13 Neb. 523.

But can this defense be interposed in a case like this? Under the city charter the mayor and common council have the management of control of the finances of the city (section 1, article 3), and upon them is conferred the power to appropriate money and provide for the payment of the debts and expenses of the city. Subd. 1 of sec. 1, art. 3. This power is subject, however to the limitation that no appropriation or payment shall be made from any *revenue* or *fund* account in excess of the amount actually collected and in the treasury. Sec. 2, art. 3. Or, as expressed in section 30, article 4, they shall not appropriate money for any purpose whatever in excess of the revenue of the fiscal year actually collected, and in the treasury at the time of such appropriation, and unappropriated. Now it is quite true that section 2, article 3, *supra*, provides that within the first month of each fiscal year, the mayor and common council shall, by ordinance, as far as practicable, make all necessary apportionments of the revenue to be raised for such year for the expenses of the several departments, and for all public works under proper headings, and for such other objects as it may be necessary to provide for. But as long as any money which has been apportioned to any fund remains in the treasury unappropriated, it is within the reach of the appropriating power of the mayor and common council for legitimate purposes.

The exercise of the power of appropriation and not of apportionment is what places the money in any fund beyond the reach of the mayor and council. The apportionment has no such effect. It may be revised or altered by ordinance as often during the fiscal year as the mayor and council shall deem necessary for the best interest of the city. It may be that in their annual apportionment they have apportioned to one fund too much and to another not enough. After a

discovery of this fact it would be strange indeed if they could not reapportion the money in these funds, or in any one or more of them. The exercise of this power might be made necessary by an epidemic, riots or other causes unforeseen. Hence, to contend that, "apportionment" and "appropriation" are convertible terms, is absurd.

It would seem, however, that, where it is shown that the mayor and council have apportioned by ordinance, all the money actually in the treasury at the time of the apportionment, as well as that which it is estimated will be raised for that fiscal year, this establishes *prima facie* that such money will be needed for the purposes for which it is apportioned, namely, the ordinary current expenses of the city. But a judgment like that of the relator, according to the testimony of the respondents' witnesses, falls within the category of ordinary current expense. It is distinguishable from that class of judgments rendered against a city or county on a funded debt as in the *Macon county case* in 68 Mo. 29, *supra*, where, to pay which, a special tax is authorized to be levied and collected. Therefore, in resisting the payment of this judgment the excuse that the money in the treasury has been apportioned to the various funds, and that the fund out of which it is payable is exhausted, can no more avail than if the relator's judgment were based on any other ordinary current expense of the city, as for illustration, such as water, gas, police, and the like.

It may be, and likely is, true, that, where certain funds have no more than enough money in them to defray the expenses of certain departments, a court would not compel a reapportionment that would subtract from such fund for the purpose of adding to another that was deficient. But however all this may be, it does not appear from any evidence in the record

that the mayor and council, for the year in question, did apportion by ordinance all the revenues of the city that were subject to apportionment by them among the various funds referred to in section 2, article 3 of the charter. No ordinance was introduced in evidence to prove an apportionment.

It is true, Mr. Graham, a witness for the respondents, testified "that, on the first of each fiscal year, an ordinance is prepared by the mayor and city council on the estimate of the comptroller apportioning the estimated revenue of the city for the coming fiscal year among the different departments. The apportionment is made for the sinking fund and all other departments of the city outside of the general fund. Under the head of the general fund is embraced the police department, fire department, the expense fund, the hospital, workhouse, officers and employees, and other departments embracing the actual expenses of the city government." The effect of this testimony does not prove the passage of an apportionment ordinance by the mayor and council for any particular fiscal year. It shows no more than the practice of the city government; nor does it prove the contents or scope of such ordinance; nor does it prove or tend to prove how much money was apportioned to each fund, nor how much, nor what per cent. of the estimated revenue for the fiscal year was apportioned.

According to the testimony of comptroller Holmes, we are led to infer that there may have been unappropriated balances in some of the funds that were covered back into the treasury at the end of the preceding fiscal year and again became the subject of apportionment, and remained in the treasury unapportioned. There is in the record no evidence of an apportionment of all the money in the treasury, subject to apportionment to the various funds. If the apportionment of the money

in the treasury to the various funds proves that such money is needed for the ordinary current expenses of the city we have no such evidence in this case. In the absence of a showing by evidence that an apportionment was made by ordinance, the revenue of the city in legal contemplation was unapportioned and subject to appropriation for any ordinary current expense of the city. Nor was there any evidence that the money in the treasury so unapportioned was all needed to meet the ordinary current expenses of the city. But this latter showing, as we have seen, was unnecessary, since the relator's judgment is based on a claim that must be classed as an ordinary current expense of the city.

Besides this, Mr. Raymond, deputy city treasurer, testified he was entrusted with keeping the books, ledger, fund register and cash book of the treasurer's office. He stated there was a general fund, a sinking fund, bond and interest fund and that the remainder of the money in the treasury was divided up into various other funds and are paid out by warrant. He further stated that the books in his office showed a balance of $678,000, and that there was money in the treasury which could be appropriated to the payment of relator's judgment. The respondent's objection that no demand was made by relator on them to pay the judgment prior to the issue of the alternative writ, is answered by *State ex rel. Cassidy v. Slavens*, 75 Mo. 508.

In any view that may be taken of the case we think that the judgment of the circuit court awarding the peremptory writ was proper under the pleadings and evidence, and, therefore, it will be affirmed. All concur.