JAMES F. MISTER, Administrator of JOHN DOWLING, Deceased, Appellant, v. THE CITY OF KANSAS, Respondent.

Kansas City Court of Appeals, June 8, 1885.

1. KANSAS CITY CHARTER—CONSTRUCTION OF ARTICLE IV, SECTION 29, THEREOF.—Section 29, Article iv, of the charter of Kansas City provides in substance : 1. That its common council shall not appropriate money for *any purpose whatever*, in excess of the revenue of the fiscal year. 2. That said council shall make no such appropriation in excess of the revenue of the fiscal year actually collected and in the treasury at the time of the appropriation. 3. That neither said council, nor any officer, shall have the power to bind the city by *any contract* or *any act* to pay money until a definite amount of money shall have been first appropriated ; and 4, that the maximum limit of the city's liability in all cases, on account of any such contract or act, shall be the amount of such appropriation. *Held*, that the language is clear and unambiguous, and must be construed according to its literal terms ; and that, since no exceptions are made by it, that its provisions apply alike to all contracts and all acts made or done by any of the officers of said city ; and that its provisions are applicable to the case made by this record.

2. ——— TRANSACTIONS WITH MUNICIPAL CORPORATIONS.—Those who deal with the officers of a corporation must ascertain, at their peril, what they will be conclusively presumed to know, that these public agents are acting strictly within the sphere limited and prescribed by law, and outside of which they are utterly powerless to act. *Cheeney v. Brookfield*, 60 Mo. 54.

3. —— Liability on Implied Contract.—The law implies no undertaking on the part of a city by reason of a contract made by her officers in violation of law. *Cheeney case, supra.* If the prohibition of the law is worth anything it is as effectual against the implied as the express promise.

Appeal from Jackson Circuit Court, Hon. T. A. Gill, J.

*Affirmed.*

Statement of case by the court.

This is a suit brought by the administrator of John Dowling, on a contract by Dowling with the defendant.

The defendant, on June 3, 1879, duly enacted the following ordinance :

"*Be it ordained*, viz : That the retaining wall along the west side of Bluff street, from its present northern terminus, to the north line of Fifth street, shall be completed of the same material, and in the same manner as that portion thereof already constructed. The work to be completed within 90 days from the time a contract therefor binds and takes effect, and to be paid for in monthly estimates of the city engineer.

"Section 2. That the sum of 10,000 dollars is hereby appropriated out of the general fund to pay for said improvement."

John Dowling, being the lowest and best bidder for the work thus ordered by defendant, was awarded the same, and on June 16, 1879, he entered into a written contract with defendant for doing such work at a price therein named, for the masonry and filling in earth behind masonry, called for by such contract. The contract provided, among other things, that the work should be done according to the stipulations therein set out, which, among other things, provided as follows :

"The engineer *may at any time add to or lessen the thickness of said wall*, as in his judgment he thinks best, without any extra cost to the City of Kansas, and his decision shall be final as to measurement, and the use or disuse of any material. The wall to be built in accordance with the plan shown herewith. It is understood

that all earth excavation is to be done for the contractor, but should any of the top of the stone have to be removed in order to make a better foundation for the wall, *the contractor will be expected to remove the same as the city engineer may direct, and his time to be kept and paid for accordingly.* Bidder must bid on the earth filling, so that the filling behind the wall will be carried on as the stone work advances, as the stone contractor is the only one who can do the earth work behind the wall as the same should be done."

It is claimed by plaintiff, and will by us be assumed as a fact, that John Dowling completed the work in accordance with the terms of the contract, and that the work was duly accepted by the defendant through her engineer. As testified by plaintiff's witness, Knickerbocker, defendant's city engineer in charge of work in question, "the work done under said contract, according to the prices stipulated therein, amounted to about $11,560, in the aggregate, this including the filling in behind the wall as well as the masonry." The defendant paid Dowling the sum of $10,000, the amount appropriated, but refused to pay the balance, for which amount, alleged by plaintiff to be $1567.00, this suit is brought. Said witness, Knickerbocker, testifying for plaintiff, also said "that the city council of defendant ordered him to make an estimate of the cost of the wall contracted by contract sued upon. He did so and asked for an appropriation of $12,000 for the masonry alone, but the city council made an appropriation of only $10,000 at the time."

The charter of defendant contains the following provisions:

"SECTION 29. The common council shall not appropriate money, for any purpose whatever, in excess of the revenue of that fiscal year actually collected and in the treasury at the time of such appropriation, and unappropriated. Neither the common council nor any officer of the city, * * * shall have authority to make any contract or do any act binding the City of Kansas, or imposing upon said city any liability to pay money until

a *definite amount of money shall* have first been appropriated for the liquidation of all pecuniary liability of said city under said contract, or in consequence of said act; and the amount of said appropriation shall be the maximum limit of the liability of the city under any such contract or in consequence of any such act. Said contract, or action, to be *ab initio* null and void as to the city for any other or further liability."

Judgment was rendered by the circuit court in favor of defendant. The plaintiff has appealed to this court.

C. O. TICHENOR and JAMES F. MISTER, for the appellant.

I. The section of the charter relied upon as a bar to plaintiff's claim, is set out in *haec verba* in the statement of case made by the record. It is in the nature of a prohibition to the common council against appropriating money for any purpose whatever in excess of the revenue of the fiscal year actually collected and in the treasury at the time of appropriation and unappropriated; and that the amount of appropriation shall be the maximum liability of the city for any contracts or acts made or done by said council.

II. The courts will carry out the intent, gathering it from the whole act, even if a *literal interpretation* must be rejected, or a *restricted one* given. *Conover v. R. R.*, 59 Mo. 293, per Napton, J. Under such rule of construction the section of the charter has no application here. It applies only to cases where it is *practicable* that the cost of the work should be first ascertained, and not to cases (like this) where it was *impossible* to ascertain the *amount* of work to be done and the *cost thereof* until after it is completed. This case was not within the spirit or purpose of the prohibition. *Harlem Gas Co. v. Mayor*, 33 N. Y. 309; Dillon Mun. Corp. (3rd Ed.) Vol. 1, sect. 469; *Nebraska City v. Gas Co.*, 9 Neb. 339; *Hitchcock v. Galveston*, 96 U. S. 341.

III. Where a contractor has entered into a contract in good faith, relying upon the regularity of the pro-

ceedings of the common council, *the city having received the benefit of the performance,* is estopped from questioning the regularity in that regard. *Moore v. New York,* 73 N. Y. 238; Dillon Mun. Corp. (3rd Ed.) Vol. 1, sect. 459 and 461, note 2; *Alleghaney City v. McClarkan,* 14 Pa. St. 81.

IV. The evidence in this case, assuming the contract to be a valid one, and imposing a legal liability on defendant, is strongly preponderating for plaintiff. The making of the contract, the doing of the work, and the amount due to plaintiff's testator under the prices agreed upon by the contract, are all uncontroverted. The only further question is as to the character of the work and its substantial performance according to agreement, and the current of evidence, from both sides, is that it was.

WASH. ADAMS, R. H. FIELD and W. A. ALDERSON, for respondent.

I. Under section 29, article iv, of the charter of Kansas City (Laws 1875, page 216), the city officers could not, with the protection of this statute to the city, impose any liability upon the city beyond the sum appropriated; the contract in excess of the sum was void as to the city. *Perkinson v. St. Louis,* 4 Mo. App. 322; *Bladen v. Philadelphia,* 60 Pa. St. 464; *McDonald v. Mayor,* 68 N. Y. 23; *Goodrich v. Detroit,* 12 Mich. 279; *Wallace v. Mayor of San Jose,* 29 Cal. 180; *Keating v. City of Kansas,* Sup. Ct. of Mo., not yet reported.

II. There can be no recovery of a *quantum meruit* from the city for work done under a void contract, when it is void (as is this contract), for not observing the specific and only method pointed out by which its officers could contract and bind the city. Otherwise there would be no benefit to the public from the legislative restriction and immunity guaranteed in the charter provisions. *Keating v. City of Kansas, supra; Dickinson v. Poughkeepsie,* 75 N. Y. 65; *Mayor, etc., v. Eschbach,* 18 Md. 276.

III. The resolution of the common council con-

firming the alleged contract did not validate it, because a ratification of an unauthorized contract can only be made in the same form and by the same persons who could have authorized it by ordinance. Dillon Mun. Corp. (3rd Ed.) sect. 465 ; *Delafield v. State of Illinois*, 2 Hill (N. Y.) 175 ; *McCracken v. San Francisco*, 16 Cal. 595 ;· *Saxton v. Beach*, 50 Mo. 488 ; *Thompson v. Boonville*, 61 Mo. 282 ; *Irvin v. Devors*, 65 Mo. 625.

IV. Appellant concedes, and the evidence shows, that the total amount *appropriated* for the work done, was paid to appellant's testator.

Opinion by HALL, J.

1. The first and the material question for our determination is, what is the meaning and what is the effect of the above section of defendant's charter as applied to the·facts of this case. The meaning of that section is unmistakable. It clearly, in substance, provides : 1st. That defendant's common council shall not appropriate money for *any purpose whatever* in excess of the revenue of the fiscal year. 2nd. That said council shall make no such appropriation in excess of the revenue of the fiscal year actually collected and in the treasury at the time of the appropriation. 3rd. That neither the common council nor any officer shall have the power to bind defendant by *any contract* or *any act* to pay money until a definite amount of money shall have first been appropriated ; and 4th, that the maximum limit of defendant's liability, in all cases, on account of any such contract or act, shall be the amount of such appropriation.

The language of said section is clear and unambiguous. By it no exception is made, but its provisions apply alike to all contracts and all acts made or done by any of defendant's officers. We cannot construe said section so as to add thereto a provision, in the nature of an exception, which the legislature did not see fit to insert. "This, as is well settled by an unbroken current of authority, is not permissible where the language of the law is clear and unambiguous, as is the case here, ex-

cept where to give effect to the language used, according to its literal terms, would lead to a gross absurdity or manifest wrong, or inconsistency, which courts will not impute to a legislative body." *Prince v. City of Quincy*, 105 Ill. 138. The plaintiff contends that "it was not possible to ascertain the cost of this work, except approximately, and this was done, until after it should be completed and measured and the reckoning made from the prices per cubic yard stipulated for by the contract?" and, therefore, the provisions of said section do not apply to this contract in suit. In support of this contention the plaintiff has cited the cases of *Harlem Gas Co. v. Mayor, etc.*, 33 N. Y. 309; *Nebraska City v. Gas Co.*, 9 Neb. 339; and *Hitchcock v. Galveston*, 96 U. S. 341. In the case of *Gas Co. v. Mayor, etc.*, *supra*, the provisions of the law were "whenever any work is necessary to be done to complete or perfect a particular job, or any supplies are needful for any particular purpose, which job was to be undertaken or supplies furnished for the corporation, and the several parts of said work or supplies shall together involve the expenditure of more than $250.00, the same shall be by contract, under such regulations concerning it, as shall be established by ordinance of the common council, unless by a vote of three-fourths of the members elected it shall be ordered otherwise;" and "all contracts by or in behalf of the mayor, alderman, and commonalty of the city of New York, shall be awarded to the lowest bidder for the same, respectively, with adequate security, and every such contract shall be deemed confirmed in and to such lowest bidder at the time of opening the bids, estimates, or proposals therefor, and such contract shall be forthwith duly executed in the name of the mayor, alderman, and commonalty, by the head of the department having cognizance thereof, with such lowest bidder." In that case two opinions, not dissenting, but concurring opinions, were delivered, one by Porter, J., the other by Brown, J.

Porter, J., said: "The contract in question is not within the legitimate scope and intent of these provisions in the amended charter. They were designed to regulate

contracts for the performance of work and the purchase of supplies. The gas was manufactured by the company for itself, and not for the corporation. It never became the property of the city by purchase, in the sense applicable to ordinary supplies. * * * To extend the provisions of this section of the amended charter to such a case in disregard of the manifest purpose of the enactment, would involve a departure from the familiar rule that general words are to be restrained, in their application, to the subject-matter in reference to which they are employed."

Brown, J., said: "In the case we are considering, the case shows that the plaintiff's mains and conductors were the only things of the kind laid down in the streets of the city, north of the center of 79th street, and that there was no other individual, company or corporation having the ability and the means to supply the city with illuminating gas to light the streets. Knowing this, the common council, in granting to the Harlem company the privilege of occupying the streets with their mains, did so upon condition that the latter should supply the streets of the city with gas for street purposes, within two years from the time of the passage of the resolutions. This condition is wholly inconsistent with the idea of competition from several bidders, and the contract awarded to him whose offer was best for the city, * * *"

In the case of *Nebraska City v. Gas Co.*, *supra*, it is said: "This section has no application to contracts of this description, but to those respecting streets, bridges, or other work or improvement to be made for or owned by the city." Its language on this subject is: "Before the city council shall make any contract for building bridges or sidewalks, or for any work on streets, or for any other work or improvement, an estimate of the cost thereof shall be made by the city engineer and submitted to the council, and no contract shall be entered into for any work or improvement for a price exceeding such estimate, etc. Now, all that was contracted for here was the supplying the city with light, not for

the erection of gas works to be owned by the city. And the contract was made with the company, which had the exclusive right to that business within the city, the only source from which such light could have been obtained. Clearly this section of the statute has no application here, and the argument based upon it falls to the ground."

In *Hitchcock v. Galveston, supra,* the court said: "Another objection to the validity of the contract, urged by the city, is founded upon a provision of the charter, that the council shall not borrow for general purposes more than $50,000, and it is said the contract, if valid, creates a liability of the city exceeding that sum. * * * For these reasons, we are of opinion that the limitation upon the power of the council to borrow for general purposes did not make the agreement with the plaintiffs invalid."

The agreement in suit was a contract for filling, grading, curbing and paving certain parts of certain streets of the city of Galveston.

It will thus be seen that the cases cited by plaintiff are not in point and do not support his contention.

The provisions of said section apply to and include the contract in suit, unless to so hold would lead to "a gross absurdity or manifest wrong or inconsistency," such as we cannot impute to the legislature. How such holding by us would or could lead to such a result we cannot perceive. Said action does not contemplate that the amount of the appropriation shall be the exact amount expended; but on the contrary it provides that the amount appropriated shall be only the maximum amount expended. It would seem that the section was enacted with a view to such a case as the plaintiff contends this case is, a case in which only an approximate estimate of the cost of the proposed work could be made.

One of the prime objects contemplated by the legislature in the enactment of the section of the defendant's charter under discussion, was to prevent the city's expenditures for any year exceeding the revenues of that

year. This object is made perfectly clear in the beginning of the section. How can that object be accomplished, and the plaintiff's position be maintained? If no appropriation need be made in advance of making such contracts as the contract in suit is claimed to be, where the exact amount of expenditure thereunder can not be ascertained until the contract is completed, how can the officers of defendant manage to keep the expenses for each year within its revenues? If the amount of liability incurred by the defendant by reason of such contracts cannot be known until the work shall be all done, how can defendant know what contracts she may enter into, with a given amount of money only with which to pay on account thereof? The exact amount of the liability need not be appropriated, the approximate amount may be appropriated by the common council.

The council should, within the limits of prudence, appropriate an amount sufficient to meet all the costs of a contract proposed by the city, where such costs are contingent and to an extent unknown. A contractor should not enter into a contract with the city until an amount has been appropriated by the common council sufficient in his opinion to pay for all the work to be done by him under the contract.

The contract is not made first and then appropriation by the common council to cover the cost incurred by the contract. But first an appropriation is made to cover the expense of a proposed work. This appropriation is necessarily approximate, because, after it is made, the contract is let to the lowest bidder. The act of appropriation does not require or even contemplate the making of a contract for the exact amount of the appropriation; for, if so, why the competition among bidders, and the letting of the contract to the lowest bidder. The only effect of the act of appropriation is to prevent the making of a contract imposing on the city a liability in excess of the amount appropriated. The contract must be and can only be made subject to the appropriation.

We are clearly of the opinion that the said section

applies to and controls the contract in suit, construed as it is by plaintiff.

But is the construction of the contract, made by the plaintiff, correct?

The evidence does not show that it was impossible, or even difficult for the defendant's city engineer to make an exact estimate of the cost of the contract work, to be done in accordance with the plans and specifications thereto attached, and the prices therein fixed.

But, on the contrary, the plaintiff's only witness testified that he made an estimate of such cost, based, as we presume, on such plans and specifications, without regard to any fixed prices, and that such estimate was for $12,000 for the masonry alone. But the plaintiff contends, as we understand him, that the contract rendered it impossible for any one to estimate the exact cost of the work by stipulating that the defendant's "engineer may, at any time, add to or lessen the thickness of said wall," because it was impossible for any one to know what changes the engineer might make. The evidence in this case does not show that any such changes were made, but the inference to be drawn from the evidence is that no such changes were made. To hold that such a provision in a contract prevents the said section from applying to it, would be to annul and repeal such section.

We hold, then, that the said section applies with full force to the contract in suit.

2. It follows that, as the defendant has paid to plaintiff the full amount appropriated, she is not liable for any balance in excess of such amount. *McDonnel v. Mayor*, 68 N. Y. 23; *Goodrich v. City of Detroit*, 12 Mich. 279; *Wallace v. Mayor of San Jose*, 29 Cal. 188; *Wolcott v. Lawrence County*, 26 Mo. 276; *City of St. Louis v. Clemens, Jr.*, 43 Mo. 404.

"Those who deal with the officers of a corporation must ascertain at their peril, what they will be conclusively presumed to know, that these public agents are acting strictly within the sphere limited and prescribed by law, and outside of which they are utterly powerless

to act." *Cheeney v. The Inhabitants of the town of Brookfield*, 60 Mo. 54.

The plaintiff is in error in contending that John Dowling was not bound to look to the authority of defendant's engineer to make the contract in question.

The plaintiff is equally in error in holding that the defendant is estopped from denying the validity of the contract by "having received the benefit of the performance" of it by said John Dowling.

*Cheeney v. Brookfield, supra*, in which the case of *Alleghaney City v. McClurkan* (14 Pa. St. 81), is distinguished from such a case as the case at bar, and the case of *Underwood v. Newport Lyceum* (5 B. Mon. 130), is disapproved.

3. The plaintiff urges that "the law implies an undertaking by a corporation to pay for labor and materials employed in their service, and of which it has accepted and is enjoying the benefit." But the law implies no undertaking upon the part of a city by reason of a contract made by her officers in violation of law. *Cheeney v. Town of Brookfield*, 60 Mo. 54; *Walcott v. Lawrence County*, 26 Mo. 277; *Johnson v. School District*, 67 Mo. 321; *City of Litchfield v. Ballow, et al.*, Supreme Court of U. S., April 6th, 1885. Miller, Judge, in delivering the opinion says : "There stands the existing indebtedness to a given amount in relation to the sources of payment, as an impassable obstacle to the creation of any further debt, in any manner, or for any purpose whatever. If this prohibition is worth anything, it is as effectual against the implied as the express promise."

*McDonald v. Mayor* (68 N. Y.), in which case Folger, J., speaking for the court, said : "How can it be said that a municipality is liable upon an implied promise, when the very statute which contains its corporate life, and gives it its powers, and prescribes the mode of the exercise of them, says that it shall not, and hence cannot, become liable by any express promise ?"

The judgment of the circuit court is affirmed. All concur.