# PRYOR v. KANSAS CITY, Appellant.

### In Banc, December 19, 1899.

1. **Ordinance:** PART OF CITY'S CONTRACTS. The city charter and ordinances are a part of any contract the city enters into for the construction of a sewer, etc., whether they are made a part of it by express terms or not.

2. **City's Revenue:** LIMITATIONS ON COUNCIL AND MAYOR: APPROPRIATION. Sections of city's charter prohibiting appropriations of the city's revenue in excess of the amount actually collected and in the treasury, and making void all city contracts unless there is first appropriated money for the payment of the work done thereunder, may be made to apply solely to the general current revenue of the city derived from taxation, and if their language shows that they apply only to such revenue, the contract for a sewer to be constructed by using a fund raised by the sale of bonds issued pursuant to the result of a special election held for that special purpose under another section of the charter, will not be void because it calls for a sum in excess of the amount belonging to the general revenue fund applicable to such public work, there being a sufficient amount in the treasury belonging to the special fund to cover the specific contract at the time it was made and at the time the contractor was compelled by the city to cease work under his contract.

   And in such case the *appropriation* for such special fund is made by the adoption of the ordinance directing the work to be done and that so much of the money thus raised be used for that special purpose.

   *Held,* by MARSHALL, J., in a dissenting opinion, in which SHERWOOD and BURGESS, JJ., concur, that the restrictions of the charter and the constitution in reference to the appropriation of public funds and the making of contracts for public works, apply alike to funds raised by a special vote and to general revenue, and the special fund voted for the sewer in this case having been exhausted, and the amount sued for being payable, if at all, out of the general revenue, and no appropriation ever having been made therefor, the contractor can not recover for the work done, although there was at the time the contract was made sufficient moneys in the treasury belonging to the special fund to have more than covered his contract had it been appropriated. *Held,* also, that neither the money raised for such special purpose as a result of such special election, nor any other public money in public custody, can be applied to pay any contract until it has been *specifically appropriated* by the legislative branch of the government, for that specific purpose. *Held,* further, that the

contract was void because entered into in a manner expressly prohibited by the charter. *Held*, further, that a vote of the people authorizing the sale of bonds, the proceeds to be applied to a specific purpose, is not an appropriation by the people themselves of any portion of such proceeds to payment of any contract entered into to do the work, but that such appropriation must be made by the city authorities in the manner prescribed by the charter, in order to make the contract valid.

3. **Contracts**: BREACHES: CAUSES OF ACTION. Several breaches of the same contract make only one cause of action, and they should all be stated in the same count.

Appeal from Jackson Circuit Court.—*Hon. J. H. Slover*, Judge.

AFFIRMED.

*R. B. Middlebrook* for appellant.

(1) The petition fails to state a cause of action. It omits to aver that a definite amount of money was first appropriated by the common council for the liquidation of all pecuniary liability of the city under plaintiff's alleged contract, and it fails to state that the ordinance contemplating the payment of money to plaintiff contained the indorsement of the city comptroller to the effect that sufficient unappropriated means stood to the credit of the O. K. Creek sewer fund to meet the requirements of constructing division 4 of the sewer as provided in plaintiff's ordinance and contract. Art. IV, sec. 30, K. C. Charter; Ib., art. III., sec. 2; Smith Canal and Bridge Co. v. Denver, 20 Colo. 84; Bladen v. Philadelphia, 60 Pa. St. 464; McDonold v. Mayor, 68 N. Y. 28; McCoy v. Briant, 53 Cal. 247; Lethbridge v. Mayor, 133 N. Y. 232; Smith v. City of Newberg, 77 N. Y. 130. (2) The court should have given instructions 2 and 3, enforcing article IV, section 30, and article III, section 2. Mister v. Kansas City, 18 Mo. App. 217; Keating v. Kansas City, 84 Mo. 415; Cheney v. Brookfield, 60 Mo. 54; Crutchfield v. Warrensburg, 30 Mo. App. 456; Peterson v. Mayor, 17 N. Y. 449; Walcott

v. Lawrence Co., 26 Mo. 272; Heidelburg v. St. Francois Co., 100 Mo. 69; Sturgeon v. Hampton, 88 Mo. 213; Saline Co. v. Wilson, 61 Mo. 230; Globe Furniture Co. v. Dist. No. 7, 51 Mo. App. 551; City of Superior v. Norton, 63 Fed. Rep. 357; Sutherland on Stat. Const., p. 592.   These authorities and charter provisions are in harmony with the jurisprudence and state law of Missouri.   Sec. 3157, R. S. 1889.   (3)   The last clause of article III, section 2, charter, provides that its requirements must be complied with "or it shall not be lawful to pass the said ordinance."   This takes this kind of ordinances out of the general rule, announced in St. Louis v. Foster, 52 Mo. 513, and classes them as defined in City of Tarkio v. Cook, 120 Mo. 1, and City of Superior v. Norton, 63 Fed. Rep. 357.   (4)   Section 44 of article XVII of the charter, must be construed with the rest of the charter *in pari materia*, and not as a complete law in and by itself alone, disassociated from the other provisions of the charter.   State ex rel. v. Hostetter, 137 Mo. 636; Lamar Water Co. v. Lamar, 128 Mo. 188; State ex rel. v. Barlow, 48 Mo. 17.   (5)   The divisional opinion proceeds upon the assumption that the ordinance submitted the proposal to vote bonds, and the provisions of article XVII, section 44, of the charter, specifying with precision the purposes for which the bonds shall be voted, and for what the proceeds shall be used, have done away with the necessity for section 30, article IV, and section 2, article III.   Section 44, however, is nothing but a declaration of the common law, as announced in numerous decisions governing elections held for special purposes. Payne's Law of Elections, sec. 247 ; Cushing v. Bedford, 105 Mass. 526; St. Louis v. Epperson, 97 Mo. 300.

*Warner, Dean & McLeod* for respondent.

(1)   The charter with respect to the general revenues of the city provides at the beginning of each fiscal year the mayor and common council shall make an apportionment of the general funds or revenues of the city for the expenses of the sev-

eral departments, and for all public works under proper head-
ings, and for such other objects as it may be necessary to
provide for as far as the same is practicable, and that there
shall be no appropriation or payment made for any revenue
or fund account in excess of the amount actually collected in
the treasury. (2) Section 44 of article XVII, of the charter
and the ordinances enacted in pursuance thereto, did appro-
priate the money for the particular work, and if this appropria-
tion was not sufficient, complete and full, then there can be no
appropriation. The fund was secured by the voting of bonds
and the sale thereof for particular improvements, and could
be used for no other. The charter itself appropriated the
fund, and the subsequent ordinances likewise appropriated it.
Both provided in express terms that the fund shall be applied
to the construction of a public sewer. Any other appropria-
tion would have been as idle a ceremony as it would have been
an ineffectual one. The city on the one part, and the plaintiff
on the other, contracted for a particular improvement, and
with reference to a particular fund with which to pay for it.
When the contract was made with Pryor there had been ap-
propriated and set aside by the charter and the ordinances
a sufficient sum to meet the liability of the city with respect
to said contract. (3) Our contention is that the other pro-
visions of the charter which the appellant refers to, have no
possible application to this particular case any more than they
had to the construction of the city hall. Those provisions had
reference merely to the ordinary contracts which are created
from time to time in the ordinary administration of the affairs
of the city, and not to these special improvements specifically
provided for in the charter, are to be acquired in a special man-
ner, as by holding an election and voting bonds under a man-
datory instruction set out in the charter and in the ordinances
themselves that the funds derived from the sale of the bonds
"shall be applied" to such special improvements, and no other.
Meyer v. Porter, 65 Cal. 57; Budd v. Budd, 59 Fed. Rep. 735.

See, also, Water Co. v. City of Aurora, 129 Mo. 540; Lamar Water & Electric Light Co. v. City of Lamar, 128 Mo. 188.

## IN DIVISION ONE.

VALLIANT, J.—This is a suit to recover damages alleged to have been sustained by the plaintiff for breaches of a contract with the defendant city for the construction of a portion of what is called O. K. Creek sewer within the city. There are three breaches of the contract alleged, but since the finding and judgment were for the defendant on two of them and the plaintiff has not appealed we are concerned only with that one on which plaintiff recovered, which consists of the failure of defendant to pay the balance claimed to be due for work done.   By the terms of the contract monthly estimates were to be furnished the plaintiff by the city engineer in charge of the work as the same progressed, which the city was to pay monthly, except fifteen per cent to be retained until the completion of the work and then paid to plaintiff.   Five such estimates were furnished, on which the fifteen per cent thus retained amounted to $4,302.03, which with interest was the sum for which there was a finding and judgment for the plaintiff in the circuit court.

The points of defense which are really insisted upon are that certain provisions of the city charter imposing restrictions on the city officials in the matter of making such contracts were not observed.   These charter provisions are as follows:

Sec. 30, art. IV.   "The common council shall not appropriate money for any purpose whatever in excess of the revenue of the fiscal year actually collected and in the treasury at the time of such appropriation and unappropriated.   Neither the common council nor any officer of the city . . . . shall have authority to make any contract or do any act binding Kansas City, or imposing upon said city any liability to pay money until a definite amount of money shall first have been appropriated for the liquidation of all pecuniary liability of said city under said contract, or in consequence of said act;

and the amount of said appropriation shall be the maximum limit of the liability of the city under any such contract . . . . and said contract or act shall be *ab initio* null and void as to the city for any other or further liability. Any member of the common council who shall knowingly vote for any appropriation of money or the making of any contract in violation of this charter . . . . shall be guilty of a misdemeanor," etc.

Sec. 2, art. III. "No appropriation or payment shall be made from any revenue or fund account in excess of the amount actually collected and in the treasury. Within the first month of each fiscal year the mayor and common council shall, by ordinance, as far as practicable, make all necessary apportionments of the revenue to be raised for such year to the expenses of the several departments, and for all public works, under proper headings, and for such other objects as it may be necessary to provide for. All ordinances that contemplate the payment of any money shall, upon the second reading, be referred to the appropriate committee of the house in which such ordinances are introduced, who shall obtain the indorsement thereon of the comptroller, to the effect that sufficient unappropriated means stand to the credit of the fund or revenue account therein mentioned to meet the requirements of such ordinances, and that the same is in the treasury, or it shall not be lawful to pass the said ordinances."

In making the contract sued on there was no attempt to follow the requirements of those two sections of the charter, and if they should have governed the contract in suit, the plaintiff can not recover.

But the plaintiff insists that the above mentioned sections of the charter have nothing to do with this case, and that the contract is bottomed on the following section of the amended city charter and the proceeding thereunder, to wit, section 44 of article XVII:

"Sec. 44. The common council may by ordinance within the limitations and in conformity to the Constitution of the State, submit to the qualified voters of the city, at any

special or general election a proposition to issue by the city, bonds to an amount not exceeding five hundred thousand dollars; provided, that such bonds shall not be sold for less than their par value, and shall not bear more than five per cent interest per annum, and provided further, that three-fifths of the proceeds arising from the sale of such bonds shall be applied to the construction of a city hall within the city, and two-fifths thereof shall be applied to the construction of public sewer or sewers in the city; and provided further, that the common council shall, in the ordinance submitting such proposition to issue bonds, expressly designate the location of the city hall, and the location as near as practicable of the public sewer or sewers, to the construction of which the proceeds of said bonds shall be applied."

Under this section an ordinance known as ordinance No. 100 was passed calling a special election to vote on the proposition to issue bonds of the city to the amount of $500,000, of which three-fifths of the proceeds were to be devoted to the building of a city hall and the remaining two-fifths to the construction of the O. K. Creek sewer. The ordinance complied with all the requirements of the section of the charter last above quoted in detail; the election was duly held July 31, 1889, and resulted in favor of the proposition.

The bonds contemplated were issued and sold at a premium, the proceeds of two-fifths of the same amounting to $203,147.20, were set apart by the officers of the city to the credit of what was known as the O. K. Creek sewer fund.

Afterwards and in pursuance of the general scheme indicated in ordinance No. 100, ordinance No. 3190 was passed definitely establishing a portion of the sewer contemplated, and directing the board of public works to let the contract for the construction of the same, the work to be divided into sections and the contracts awarded accordingly. In accordance with this authority the board of public works entered into the contract with plaintiff sued on, for the building of one of the sections, to-wit, section 4, called for in the ordinance. The

estimated cost of the work under plaintiff's contract was $52,915.

This contract was confirmed by the common council by ordinance No. 3390. Prior to this contract there had been other sections of the sewer constructed under other contracts, and paid for out of the O. K. Creek sewer fund above mentioned, and when the plaintiff's contract was entered into there was still in the city treasury to the credit of this fund $108,833.24.

The work that was actually done by the plaintiff under his contract as shown by the five estimates furnished him by the city engineer, amounted to $25,695, upon which he received $21,392.97. At the time the fifth estimate was furnished him there was in the treasury $68,058.17, belonging to this special O. K. Creek sewer fund. After the cessation of the plaintiff's work, the city let the contract for the completion of that section of the sewer to one Sechested who finished it and the city paid him therefor $35,336.78.

The petition alleges that the defendant prevented the plaintiff from completing his contract. This was denied in the answer, and it was therein charged that the plaintiff had wrongfully abandoned his contract. On this issue of fact there was evidence adduced on both sides and the finding was for the plaintiff; there was sufficient evidence to support that finding and it will therefore not be reviewed here. The question for our consideration is, was the contract sued on invalid because it was not made in observance of the provisions of section 30 of article IV, and section 2 of article III, of the city charter above quoted.

By the express terms of the contract sued on, the city charter and ordinances are to be considered a part of it, and, as contended for by the city counselor, this would have been so in effect without such express provisions; for one who contracts with city officers is bound to know at his peril the extent of their power, and if the contract is one they are forbidden

to make, it is not binding on the city. [Cheeney v. Brookfield, 60 Mo. 53.] The strict construction of the charter provisions contended for by the learned counsel is fully sustained by the authorities cited in his brief: Keating v. Kansas City, 84 Mo. 415; Mister v. Kansas City, 18 Mo. App. 217.

In the Keating case it was sought to hold the city liable for certain street grading done under a contract founded on a defective ordinance. The contract called for payment in special tax-bills which were issued, but which proved to be worthless because of the defect in the ordinance. It was held that the defective ordinance was the result of a defective exercise of legislative power, that Keating was bound to know that the ordinance was defective, and that the city officers had no authority to found a contract on it. Hence the city was not liable.

In the Mister case a section of the then city charter similar to section 30 of article IV, above quoted, was construed. The amount appropriated by the ordinance in that case was $10,000; the contract was let under the ordinance, but when the work was done it amounted according to contract prices to $11,560, and it was insisted by the contractor that the work was of a character that its actual cost could not be calculated until it was done, and that the spirit of the charter provision would be satisfied with the manifest effort to comply with it and that its letter should not defeat the plaintiff's just demand. But the court held that the express terms of the charter were too plain for such a construction, that the amount appropriated expressed the "maximum limit of the city under the contract," that the contractor when he entered into the contract must know that whilst the cost of the work might not reach the sum appropriated yet in no event could it go beyond, at the city's expense. That was a correct construction of the charter provision as applied to that case.

But in that case the contract was made to be satisfied out of the general revenue of the city, and it was subject to the

charter provisions guarding the revenue. The court in its opinion by HALL, J., treated the charter provision in question as related to the city's current revenue. "One of the prime objects contemplated by the legislature in the enactment of the defendant's charter under discussion, was to prevent the city's expenditure for any year exceeding the revenues of that year. This object is made perfectly clear in the beginning of the section."

Section 1 of article III of the charter provides that, "The mayor and common council shall have the management and control of the finances and all other property . . . . belonging to the corporation, except as in this charter is otherwise provided, and likewise shall have power by ordinance . . . . to appropriate money and to provide for the payment of the debts and expenses of the city; . . . . to provide for the levying, assessment and collection of taxes," etc.

These are the provisions of the charter which give the mayor and common council the control of the city's finances; and section 2 of article III, and section 30 of article IV, hereinbefore quoted, and relied on by defendant, contain the limitations on that control. But the language of the sections quoted, and their relation and necessary reference to each other, all show that the subject of the legislation was the general current revenues of the city, derived from taxation, funds over which the mayor and common council had control, which they could apportion and appropriate to the various exigencies incident to the conduct of the city's affairs.

But the contract in suit was not made in the course of business regulated by these charter provisions, and was not to be satisfied out of the revenues around which those guards were placed. This was a fund raised by the sale of bonds issued pursuant to the will of the people expressed at a special election called for the purpose and in conformity to the provisions of section 44 of article XVII of the amended charter. Both

by that ·charter provision and the ordinance under which the election was held and the vote of the people on the proposition, the funds realized from the sale of the bonds were apportioned and set apart for the particular purposes of building a city hall and the construction of this sewer, three-fifths to the one and two-fifths to the other. The only power the mayor and common council have to appropriate money is given in the clause of section 1 of article II above quoted, viz., "to appropriate money and provide for the payment of the debts and expenses of the city." The other charter provisions on that subject are but limitations on that power. It would not be contended that under that clause the council could appropriate any of this money to the debts and expenses of the city other than those to be incurred for the purposes for which the fund was raised.

The learned city counselor contends that the money was apportioned but not appropriated, and points out a distinction between an apportionment and an appropriation within the meaning of section 2 of article III, *supra.* [State ex rel. v. Mayor of Kansas City, 58 Mo. App. 124.] But, however that may be, the apportionment in this case was not made under that clause of the charter and was not made by the common council at all. In fact the whole proceedings show that the city officers, including those of the law department, treated this subject as not embraced within the restrictions on which the defendant now relies.

The section of the charter itself (sec. 44, art. XVII) makes the apportionment and at the same time the appropriation, and places the fund beyond the control of the common ·council either to apportion or to appropriate. By the express terms of this charter provision three--fifths of the proceeds of the bonds shall be "applied" to the building of the city hall, and two-fifths "applied" to the construction of the particular sewer designated and located in the ordinance under which the election is held. To appropriate is "to set apart for, or assign

to a particular person or use, in exclusion of all others." To apply is "to use or employ for a particular purpose, or in a particular case; to appropriate, to devote, as to apply money to the payment of a debt" (Webster). Thus by the terms of this particular section of the charter, the ordinance passed in pursuance of it, and the vote of the people at the election held under the same, the proceeds of those bonds were put beyond the control of the common council either to apportion or appriate, and the provisions of the charter on which the city relies to defeat the plaintiff's debt have no application to the contract in suit.

There are several assignments of error, but in the main they rest on the same proposition, viz., that the contract was void because in conflict with the restrictions of the city charter contained in section 2 of article III and section 30 of article IV, and are disposed of in the above consideration of that proposition.

The objections to the petition contained in the motion to strike out, to compel plaintiff to elect, and in arrest of judgment, were properly overruled. The petition contains but one cause of action. Several breaches of the same contract do not make several causes of action, and they should all be stated in one count.

We find no error in the record. Therefore, the judgment of the circuit court is affirmed. *Brace, P. J.*, and *Robinson, J.*, concur; *Marshall, J.*, dissents.

## IN BANC.

*Per Curiam*: This cause was first heard and decided in Division No. 1 of this court and transferred for rehearing to the Court in Banc. After rehearing the cause the court adopts the opinion written by *Valliant, J.*, in Division No. 1. In which opinion *Gantt, C. J., Brace*, and *Robinson, JJ.*, concur.

*Burgess, Marshall* and *Sherwood, JJ.*, dissent.

MARSHALL, J. (*Dissenting*).—This is a suit to recover damages for an alleged breach of contract made by plaintiff with defendant for building one section of the O. K. Creek sewer. Before the completion of the contract the work was stopped by the city authorities as found by the trial court. Plaintiff recovered judgment below for the retained percentage for work done in the execution of the contract. The defense is that the contract is *ultra vires* and void, because it was not entered into in the manner provided by the charter of the city. The charter provisions invoked are sections 2 of article III, 30 of article IV, and 44 of article XVII, which are respectively as follows:

"Sec. 2 (art. III ). No appropriation or payment shall be made from any revenue or fund account in excess of the amount actually collected and in the treasury. Within the first month of each fiscal year the mayor and common council shall by ordinance, as far as practicable, make all necessary apportionments of the revenue to be raised for such year to the expenses of the several departments, and for all public works, under proper headings, and for such other objects as it may be necessary to provide for. All ordinances that contemplate the payment of any money shall, upon their second reading, be referred to the appropriate committee of the house in which such ordinances are introduced, who shall obtain the indorsement thereon of the comptroller, to the effect that sufficient unappropriated means stand to the credit of the fund or revenue account therein mentioned to meet the requirements of such ordinances, and that the same is in the treasury, or it shall not be lawful to pass the said ordinances.

"Sec. 30 (art. IV ). The common council shall not appropriate money for any purpose whatever in excess of the revenue of the fiscal year actually collected and in the treasury at the time of such appropriation and unappropriated. Neither the common council nor any officer of the city, except the comptroller, in a single instance in this charter provided, shall

have authority to make any contract, or do any act binding Kansas City, or imposing upon said city any liability to pay money until a definite amount of money shall first have been appropriated for the liquidation of all pecuniary liability of said city under said contract, or in consequence of said act; and the amount of said appropriation shall be the maximum limit of the liability of the city under any such contract or in consequence of any such act and said contract or act shall be *ab initio* null and void as to the city for any other or further liability. Any member of the common council who shall knowingly vote for any appropriation of money or the making of any contract in violation of this charter, or any officer of the city who shall knowingly do any act to impose upon the ciy any pecuniary liability in excess of the authority in this charter limited, shall be guilty of a misdemeanor, and, upon conviction, be punished by a fine of not less than one hundred nor more than one thousand dollars, or imprisonment in the county jail not less than one month nor more than one year, or by both such fine and imprisonment. If any financial officer of the city shall buy or sell, for the purpose of speculation, any indebtedness of the city, or deal therein during his term of office, he shall be guilty of a misdemeanor, and be punished upon conviction by a fine of not less than one hundred dollars nor more than one thousand dollars, or imprisonment in the county jail not less than one month nor more than one year, or by both such fine and imprisonment.

"Sec. 44 (art. XVII). *Bonds—Issuing of for City Hall and Public Sewers—Elections.*—The common council may, by ordinance, within the limitations and in conformity to the Constitution of the State, submit to the qualified voters of the city at any special or general election, a proposition to issue, by the city, bonds to an amount not exceeding five hundred thousand dollars: Provided, that such bonds shall not be sold for less than their par value, and shall not bear more than five per cent interest per annum; and provided further, that three-fifths of the proceeds arising from the sale of such bonds shall

be applied to the construction of a city hall within the city, and two-fifths thereof shall be applied to the construction of public sewer or sewers in the city: and provided further, that the common council shall, in the ordinance submitting such proposition to issue bonds, expressly designate the location of the city hall, and the location as near as practicable of the public sewer or sewers, to the construction of which the proceeds of said bonds shall be applied."

Pursuant to the provisions of section 44 of article XVII, the common council of Kansas City passed an ordinance submitting to the qualified voters of that city a proposition to issue five hundred thousand dollars of bonds, three-fifths of the proceeds of which to be used for building a new city hall and two-fifths to "be applied to the construction of a public sewer in said city along or near O. K. Creek in said city . . ."

The proposition found favor with the voters, and after the bonds had been sold and the proceeds were in the city treasury to the credit of the City Hall fund and the O. K. sewer fund, respectively, the common council passed an ordinance authorizing and instructing "the Board of Public Works to proceed to let a contract for the construction of the same" (the sewer). The board let the work in four sections at an estimated cost, as follows:

| | | |
|---|---|---|
| Section 1, | J. T. Kelly,................ | $27,525.47 |
| Section 2, | Buckner, Douglass & Co....... | 62,690.17 |
| Section 3, | Michael Walsh............... | 55,841.79 |
| Section 4, | James Pryor................ | 52,915.00 |

$198,972.43

Prior to plaintiff's work on section 4 being stopped, he had done work of the value of $25,695, of which he had been paid $21,840.75, and the retained percentage of fifteen per cent, amounting to $4,302.03, is the amount of his recovery in the circuit court.

Upon the non-completion of section 4 covered by plaintiff's contract, the city re-let the work on that section to

Charles Sechested for $30,042.70, and paid him that sum. It also paid out of the proceeds of the sale of the bonds, "miscellaneous expenses," aggregating $5,206.32. The bonds sold for $203,147.20, which was expended by the city as follows:

| | | |
|---|---|---|
| Section 1, | J T. Kelly | $27,525.47 |
| Section 2, | Buckner, Douglass & Co. | 62,690.17 |
| Section 3, | Michael Walsh | 55,841.79 |
| Section 4, | James Pryor | 21,840.75 |
| Section 4, | Chas. Sechested | 30,042.70 |
| Miscellaneous | | 5,206.32 |
| | Total | $203,147.20 |

In addition to this the city has paid out of general revenue, on account of this sewer, the following sums:

| | |
|---|---|
| Michael Walsh | $7,555.11 |
| Charles Sechested | 5,294.08 |
| Total | $12,849.19 |

And if it is liable to plaintiff in this action it will have to pay him $4,302.03 out of general revenue. With the result that in addition to the total proceeds of the sale of the bonds amounting to $203,147.29, there has been already paid $12,849.19 out of general revenue, and to this will be added the $4,302.03 to plaintiff, if he is allowed to recover, which will swell the aggregate cost of the sewer to $220,298.85.

It is an inflexible rule of law that parties dealing with a municipal corporation or with its agents or officers must, at their peril, take notice of the limits of the powers both of the municipal corporation, and of those assuming to act in its behalf. "The requirements of the charter . . . . is the only touchstone of corporate liability." [Keating v. Kansas City, 84 Mo. l. c. 419; Cheeney v. Brookfield, 60 Mo. 53; Mister v. Kansas City, 18 Mo. App. 217; State ex rel. v. Kirkley, 29 Md. 85; Gould v. Sterling, 23 N. Y. 456; Clark v. Des Moines, 19 Iowa, 199; Veeder v. Lima, 19 Wis. 280; Bryan v. Page, 51 Tex. 532; Tainter v. Worcester, 123 Mass. 311; Barton v. Swepston, 44 Ark. 437; Thomas v. Richmond, 12

Wall. 349; East Oakland v. Skinner, 94 U. S. 255; Cooley's Const. Lim. (6 Ed.), p. 233; 1 Dillon on Mun. Corp. (4 Ed.), sec. 457.] The last named author has well said: "The history of the workings of municipal bodies has demonstrated the salutary nature of this principle, and that it is the part of true wisdom to keep the corporate wings clipped down to the lawful standard."

Provisions, like section 30 of article IV of the Kansas City charter, prohibiting the passage of any ordinance authorizing any contract until the comptroller has certified that sufficient unappropriated means stand to the credit of the fund or revenue account therein mentioned to meet the requirement of such ordinances, and "until a definite amount of money shall first have been appropriated for the liquidation of all pecuniary liability of said city under said contract" are to be found in the charter of St. Louis (sec. 28, art. VI, and sec 12 of art. V ) and in the statutes of this State relating to cities of the first class (secs. 1100 and 1150, R. S. 1889); and to cities of the second class (secs. 1302 and 1303, R. S. 1889). Similar provisions are contained in charters of many other cities in other states (Philadelphia v. Flanigen, 47 Pa. St. 21; Philadelphia v. Johnson, 47 Pa. St. 382; Bladen v. Philadelphia, 60 Pa. St. 464; Smith Canal or Ditch Co. v. Denver, 20 Colo. 84). Dillon on Mun. Corp. (4 Ed.), section 130, speaking of the reason underlying these provisions says: "Such limitations have been found by experience to be necessary to prevent extravagance, are remedial in their nature, are based upon the wise policy of paying as you go, and ought, therefore, to be construed and applied to secure the end sought."

It is a matter of history, not only in our own State, but in most of the States, that before the adoption of these safeguards the credit of our cities was greatly impaired by outstanding liabilities created by reckless disregard of ability to discharge obligations extravagantly or injudiciously incurred. These provisions of city charters are in harmony with the policy of the State and the limitations upon the power of

cities to bind themselves as expressed in section 12 of article X of the Constitution. They were all intended to put the State, the counties and the cities upon a cash basis, as was pointed out by this court in State ex rel. v. Payne, 151 Mo. 663, and to prevent the creation of any liability beyond the power and present financial means of the city to pay the same, promptly, at maturity. They have had the desired effect, as the improved financial status of our municipalities fully attests.

In making the contract involved in this case the provisions of section 2 of article III and of section 30 of article IV of the charter of Kansas City were ignored entirely. There was not even a pretense of complying with them.

The only excuse offered for not doing so is that section 44 of article XVII and the ordinance under which the proposition to issue the five hundred thousand dollars of bonds was itself an appropriation by the people themselves of two-thirds of the proceeds thereof to the building of the O. K. sewer, and hence it was not necessary to observe these safeguards, and furthermore that these charter safeguards only apply to contracts which are to be paid for out of general revenue, that is, out of money raised by taxation. It is conceded that the municipality has no power to bind itself except in the manner and by the mode prescribed in its organic law, but it is contended that section 44 of article XVII must be construed alone and that sections 2 of article III and 30 of article IV, have no application to this contract, and that there is a distinction between this contract and ordinary contracts because the money to pay for this sewer was gotten into the treasury by the vote of the people, and can only be *applied* to the construction of this sewer, or in other words that the money was *appropriated* by the people to pay for the building of this sewer, and hence no appropriation by the common council to meet the obligations of this contract was necessary.

No authority or precedent is cited by counsel or the ma-

jority opinion to support the proposition, nor have I been able to find any in the books.   It is simply asserted, and, in my judgment, is not supported by reason or logic.

It is an universal rule of construction of all constitutions, statutes, charters or contracts that all of the parts relating to the same subject-matter must be construed together, and that construction adopted, if possible, which will give effect to and harmonize all of its parts.    [State ex rel. v. Marion Co. Court, 128 Mo. 427; Reddick v. Walsh, 15 Mo. 519; St. Louis v. Lane, 110 Mo. 254; Ex parte Joffee, 46 Mo. App. 360.]   It follows, therefore, that sections 2 of article III, 30 of article IV, and 44 of article XVII, should be construed so as to give effect to them all, if possible, and it is not pretended that they can not all stand together and all be followed to their strictest letter.   Section 44 provides how money may be raised and to what general purposes it shall be applied, and requires the ordinance which submits the proposition to raise the money to prescribe the location of the city hall and of the sewers to be constructed, and the ordinance in this case did so, with the result that $300,000 was raised to build a city hall at a specified place and $200,000 to build a sewer "along or near O. K. creek."   This money was to be applied to these purposes alone and could not be used for any other purposes.   But whilst this is true no money has ever been specifically appropriated to meet the obligations incurred by the *contracts* let to the several contractors for building that sewer.   It is one thing to raise money for a general purpose and impress a trust upon it for that purpose, and quite a different thing to appropriate a specific sum of money out of a general fund to meet a specific contract.   All money raised by taxation is for a public purpose and is a trust fund in the hands of the public officers for that purpose, but no money in any public custody can be applied to pay any contract until it has been specifically appropriated by the legislative branch of the government, the holders of the strings to the public treasury, for that specific

contract. This is as true of the State's revenues as it is of a municipality's. Section 43 of article IV of our Constitution provides: "All revenue collected and moneys received by the State *from any source whatsoever* shall go into the treasury, and the General Assembly shall have no power to divert the same, or to permit money to be drawn from the treasury, except in pursuance of regular appropriations made by law," etc. This is absolute, mandatory and without exception or qualification, and admits of no construction no matter from what source the money got into the treasury.

In like manner and to the same end section 2 of article III of the charter of Kansas City, requires the common council within the first month of each year by ordinance, as far as possible, to "make all necessary apportionments of the revenue to be raised for such year to the expenses of the several departments, *and for all public works*, under proper headings, and for such other objects as it may be necessary to provide for." When the revenues are thus apportioned they can not be used for any other purpose than that specified in the ordinance. They are held in trust for the purposes specified. But they are held in bulk for a specific purpose, and are not appropriated to meet any specific contract or liability. When it is desired to apply or appropriate any portion of the total sum so held in trust to the payment of a liability under a particular contract, section 30 of article IV becomes immediately applicable, and requires a particular amount to be appropriated out of the general fund so previously set apart, and also requires a certificate of the fiscal officer of the city, the comptroller, that sufficient unappropriated means stand to the credit of the *fund* or revenue account to meet the requirements of the ordinance. It will be observed that this certificate is as much required where the means stand to the credit of any *fund*, as where they stand to the credit of a *revenue* account. The reason and purpose of this safeguard is that the legislative department is not supposed to know whether the sum of all

specific appropriations equals or exceeds the sum of the general fund or revenue account; whilst the comptroller, who is specially charged with the duty of preserving the city's credit and with not allowing any fund to be overdrawn, keeps regular books and knows whether the specific appropriation covered by the ordinance authorizing the contract can be met by the amount belonging to the fund or revenue to be drawn on and remaining unappropriated therein.   In short, it is a safeguard against unwise or improper incurring of liability, to the end that the city shall not be cast into debt beyond its ability to pay.

No reason has been given or can be given why all these safeguards and precautions against running into debt, which have been provided by the framers of the Constitution and of the city charters, should apply to money gotten into the public treasury by taxation, and should not apply to money gotten into the treasury by the sale of bonds.   The State Constitution expressly prohibits money gotten into the treasury by taxation, that is revenue, and "from any source whatever" to be drawn out except in pursuance of regular appropriations.   And section 2 of article III of the Kansas City charter requires the comptroller's certificate that sufficient unappropriated means stand to the credit of the *fund* or *revenue* account therein mentioned to meet the requirements of such ordinances.   The effect upon the city's credit and the embarrassing condition which these provisions were intended to prevent is the same whether the liability arises out of contracts to be paid for out of general revenue or out of the sale of bonds.   In either event the ultimate fact is that the city has contracted beyond its ability to pay, and will be in debt, and will not have been run on a cash basis, and all because these safeguards were violated.

The distinction attempted to be made in this case between general revenue and the proceeds of the sale of these bonds is wholly untenable.   It is easy enough to say that the organic

safeguards prescribed by sections 2 of article III and 30 of article IV, shall apply to contracts to be paid for out of general revenue, and shall not apply to contracts to be paid for out of the proceeds of these bonds, but it is impossible to give any reason for so saying. No reason has been given by counsel. None has been given in the majority opinion. None can be given. None exists. Such a construction is opposed to the letter and spirit of the Constitution of the State and of the charter of Kansas City. It is without the pride of precedent and it is to be hoped it will produce no progeny. Its practical effect has already been to take over twelve thousand dollars out of general revenue to make good the deficit in the fund provided to build this sewer, and if this judgment stands the sewer will have cost $17,151.22 more than the people provided means to pay for it.

To my mind it is too clear for debate that when the people adopted the proposition to issue and sell $500,000 of bonds and apply two-fifths of the proceeds thereof to building this sewer, they never thought that money would be expended by the city officers without regard to the safeguards of the charter; they never thought they were opening the door to their agents running them into debt and requiring the deficit to be taken out of general revenue; they thought that the sum thus provided, if spent as the charter prescribed, would be sufficient to accomplish the purpose intended; they believed they were providing a fund for a purpose and not making an appropriation to meet the liability to be incurred under one or more contracts; they left it to the common council to make specific appropriations within the limits of the fund provided; they made no contracts neither did they make any appropriation; they raised the money and impressed it with a trust, set it apart for a specific purpose, just as the common council does the general revenue at the beginning of each fiscal year, but they left it to their officers and public agents to contract, to appropriate and spend the trust fund within the other requirements

of the charter. It was not so done, and the usual result of disregarding the law has followed.

The fact that when plaintiff's contract was made there remained unexpended in the city treasury of this trust fund, the sum of $108,833.24 and when he got his final estimate the sum of $68,058.17, does not affect, impair or militate against the principle involved in this case, nor does it change the fact that the sum expended for all the contracts entered into exceeded the whole amount standing to the credit of this sewer fund. No portion of that unexpended balance was specially appropriated or set apart to pay this specific contract, or any other specific contract, for if it had been it could not have been used for any other contract, and if that had been done in every case the total sum contracted to be paid could not have exceeded the fund on hand to pay the total liability incurred, and there would have been no debt left unpaid; to prevent which, was the purpose and letter and spirit of the charter, and with which plaintiff and all other contractors are charged with as much knowledge as the city officers.

For these reasons I dissent from the opinion in this case. *Sherwood* and *Burgess, JJ.*, concur herein.